In re GHR ENERGY CORP., Debtor.

GHR ENERGY CORP., Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD, and Leonard M. Wagman as he is Administrative Law Judge, Defendants.

Bankruptcy No. 4–83–00056–G.
Adv. No. 4–83–0201.

United States Bankruptcy Court,
D. Massachusetts.

May 17, 1983.

Stephen Gordon, Boston, Mass., for debtor Good Hope Energy Corp.

Corinna L. Metcalf, Washington, D.C., for N.L.R.B.

Joseph Braunstein, Boston, Mass., for creditors Committee GHR Energy.

Gerrard Kelley, Asst. U.S. Trustee, Boston, Mass.

## MEMORANDUM RE: ORDER DENYING COMPLAINT FOR INJUNCTIVE RELIEF

PAUL W. GLENNON, Bankruptcy Judge.

The Court, on May 13, 1983, denied the motion of GHR Energy, Corp. ("GHR"), for injunctive relief against the National Labor Relations Board ("NLRB"), and Leonard M. Wagman, as he is Administrative Law Judge ("ALJ"). The motion and underlying complaint[1] sought to have the Court enjoin the NLRB and the ALJ from conducting and prosecuting NLRB proceedings ("proceedings") against the debtor scheduled to commence in New Orleans on May 16, 1983.

The debtor concedes that the proceedings are exempt from the automatic stay of 11 U.S.C. § 362(a) under 11 U.S.C. § 362(b)(4). However, the debtor contends the Court can exercise its discretion in aid of a reorganization debtor and enjoin NLRB proceedings which would threaten the assets of the debtor's estate. The threat, as described by GHR, is a prospective "cloud" which an NLRB order would place on the title of the debtor's refinery. GHR contends that the disposition of the refinery is crucial to a successful reorganization and an additional

---

1. The motion and complaint were filed on May 13, 1983, shortly before the hearing. Telephonic notice of the hearing had been given to the defendants by the debtor on the afternoon of May 12.

"cloud" [2] would discourage potential buyers. Presumably, GHR is asking the Court to exercise its broad equitable powers under 11 U.S.C. § 105(a). A temporary restraining order was requested until an evidentiary hearing could be had to determine if a preliminary injunction would be appropriate.

### FACTS

Counsel for the NLRB described the background of the proceedings as follows. In February of 1980, the contract expired between the debtor and certain of its employees who are members of the Oil, Chemical and Atomic Workers Union ("OCAW"). Subsequently, the debtor discharged 28 OCAW members and engaged in practices alleged to be in violation of the National Labor Relations Act ("NLRA"). These allegations of interference with employee rights are the subject of the proceedings. The proceedings were originally scheduled to commence September 21, 1981. In August of that year, the NLRB served both subpoenas *duces tecum* and subpoenas *ad testificandum* ("subpoenas"), upon GHR, and a non-debtor company and certain of their representatives. On the second day of the hearing GHR refused to honor the subpoenas. The district court and the appeals court enforced the subpoenas. The appeals court also awarded double costs under Fed. R.App.P. 38 (entitled "Damages for Delay") on October 7, 1982.[3]

Upon the joint motion of GHR and the NLRB in November 1982, the proceedings were re-scheduled to commence in March 1983. On February 3, 1983, GHR moved for a continuance. The ALJ postponed the hearing until May 2, 1983. The debtor then once again requested the ALJ to continue the hearing on the ground it had a prospective purchaser for the refinery. The request was granted and the hearing set for May 16, 1983. The refinery has not been in operation since the date of the Chapter 11 filing, January 26, 1983.

### DISCUSSION

■ A finding that the NLRB proceedings threaten the assets of the debtor's estate is a prerequisite for staying the proceedings.[4] *See In re Shippers Interstate Service, Inc., supra; In re Bel Air Chateau Hospital, Inc.,* 611 F.2d 1248 (9th Cir.1979); *In re Tucson Yellow Cab Co.,* 10 B.C.D. 217, 27 B.R. 621 (Bkrtcy. 9th Cir.1983); and *In re Seeburg Corp., supra.* No such threat exists in the case before me.

Mere allegations of a "cloud" on the title to the refinery owned by the debtor is insufficient to constitute a threat to said as-

**2.** The Court wishes to note that its records reflect that this is but one cloud, so to speak, in a thunderhead over the refinery.

**3.** *See NLRB v. G.H.R. Energy Corp.,* 707 F.2d 110 (5th Cir.1982).

**4.** All parties agree, as does the Court, that 11 U.S.C. § 362(b)(4) excepts the proceedings from the automatic stay. *See, e.g., NLRB v. Evans Plumbing System,* 639 F.2d 291 (5th Cir. 1981); *In re Shippers Interstate Service, Inc.,* 618 F.2d 9 (7th Cir.1980); *In re Seeburg Corp.,* 11 B.R. 121 (D.C.N.D.Ill.1980) and *in re D.M. Barber, Inc.,* 13 B.R. 962, 8 B.C.D. 188 (Bkrtcy. N.D.Tex.1981). *Cf. In re Adams,* 24 B.R. 589 (Bkrtcy. 9th Cir.1982).

However, it has been held that where the company which is the subject of the proceedings is being liquidated and the interests of all parties in the assets therefore extinguished, the proceedings should be stayed as questions of unfair labor practices would then be moot. That reasoning, however, would be relevant only where the corporation as a whole is being liquidated, i.e. where there is no successor corporation, alter ego corporation or the like who could be held responsible. *See In re Shippers Interstate Service, Inc., supra* and cases cited therein. Here, it is contended that the refinery is to be sold. However, any purchaser may be liable under the NLRA as the debtor's successor in interest. *See Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) and *In re Seeburg Corp., supra.* And the question of whether GHR's order may be enforced where there a successor corporation is involved is one of fact, to be decided by the NLRB. *See Southport Petroleum Co. v. NLRB,* 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942) and *In re Shippers Interstate Service, Inc., supra.* Furthermore, the NLRB believes there to be an alter ego corporation which is not in a Chapter 11 proceeding.

Most importantly, GHR as a whole is undergoing a reorganization and the sale of its refinery will have no effect upon the NLRB's order as respects the reorganizing corporation, its non-filed affiliates, and its alter ego, if any.

sets. The NLRB stated it has filed a notice of the pendency of the NLRB proceedings. A purchaser would take the refinery with the "cloud" at *whatever* stage the proceedings are in on the date of the closing, subject to whatever agreement the parties to the sale might make. *Golden State Bottling Co. v. NLRB, supra.* The liability of the purchaser as respects the proceedings, if contested, would then be determined by the NLRB.[5] The assets are not threatened to any greater extent by the commencement of the proceedings than they are by the existence of the proceedings themselves.

The debtor also argues that a finding of a threat is proper because the ALJ believed the cloud to be a threat since he continued the proceedings on the basis of a prospective purchaser. I do not agree. The fact that the ALJ continued the proceedings upon proof of a prospective purchaser has no bearing on the issue of a threat, and to me, shows at most that the ALJ was attempting to be accommodating.

NLRB proceedings are bifurcated proceedings. What was scheduled to commence on May 16 was a hearing to determine whether alleged violations actually occurred and if a non-debtor alter ego corporation exists. Damages are not the issue. If an award of damages is entered in a later proceeding, it is still for the bankruptcy court to determine the allowability and relative priority of the claims. *In re Tucson Yellow Cab Co., supra.* The claimants will be paid when all other similarly situated claimants are paid. Therefore, the debtor's argument that it cannot now afford relief to OCAW members if ordered to do so by the ALJ and subsequently the court of appeals, must fail. As stated in *In re Tucson Yellow Cab Co., supra,* at 219, 27 B.R. 621, "we do not agree that the issuance of a back pay order forms ... a threat, even though that order may greatly enhance the amount of priority obligations payable from

the estate." *See also In re D.M. Barber, Inc., supra.*

The debtor stated that if the temporary restraining order was granted, it would, at the subsequent hearing on the issuance of a preliminary injunctive, produce evidence on the issue of threat to the debtor's assets. No offer of proof was made as to what this evidence would show. Moreover, although the Chapter 11 petition was filed on January 26, 1983, the debtor waited until May 13, 1983, the last business day before the re-scheduled hearing date, to raise the argument that the NLRB proceedings pose a threat to its assets.[6] The debtor has failed to show the Court that the commencement of the proceedings would threaten the assets of its estate.

For this reason, the motion for a temporary restraining order was denied and the complaint dismissed.

---

5. *Id.*

6. Debtor's counsel also stated that, while labor counsel is in place in Louisiana, that counsel has not been authorized by the Court to render services in the Chapter 11 proceeding. The debtor has filed numerous applications to employ special counsel in this case, and the relat-

ed cases, and several of these authorizations have been requested nunc pro tunc. Any problems relating to the status of labor counsel is of the debtor's own making. The debtor made no attempt to obtain that authorization at the hearing on May 13.