In re ORGANIZED MAINTENANCE, INC., Debtor.

ORGANIZED MAINTENANCE, INC., Plaintiff,

v.

Ford B. FORD, Acting Secretary of Labor, and E. Earl Thomas, Deputy Chief Judge, Office of Administrative Law Judges, Defendants.

Bankruptcy No. 184–41031–21.
Adv. No. 184–0185.

United States Bankruptcy Court, E.D. New York.

March 22, 1985.

Lewis W. Siegal, New York City, for Organized Maintenance, Inc.

Raymond J. Dearie, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., for Ford B. Ford and E. Earl Thomas.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The issue before the Court, raised by the defendants' Motion to Dismiss is whether an administrative proceeding brought by the Secretary of Labor to enforce the Service Contract Act of 1965, 41 U.S.C. § 351 *et seq.* (sometimes called the "McNamara—O'Hara Service Contract Act of 1965") is automatically stayed by 11 U.S.C. § 362, when a petition is filed under Title 11, and, if not, whether it is subject to stay by the Bankruptcy Court pursuant to 11 U.S.C. § 105.

Organized Maintenance, Inc., ("OMI") filed for relief under Chapter 11 of Title 11 on June 21, 1984. The complaint in this proceeding was filed on October 29, 1984.

The defendants are Ford B. Ford who was Acting Secretary of Labor at the time and E. Earl Thomas, Deputy Chief Judge of the Office of Administrative Law Judges of the United States Department of Labor.

The complaint alleges that OMI is a small minority-owned business engaged in rendering janitorial services; that it suffered substantial cash flow problems due to the escalating operating costs of a government contract, and, as a result, was forced to file a Chapter 11 petition in order to reorganize and rehabilitate itself; that around September 23, 1983, the Department of Labor ("DOL") commenced an administrative proceeding against OMI pursuant to 41 U.S.C. § 351, alleging certain violations involving the under-payment of various fringe benefits; that a hearing on the complaint was held on April 16, 1984, at which OMI was not represented by counsel because of its lack of financial resources; that the proceeding is still pending; that it seeks to debar OMI from all government contracts for a period of three years; that if that occurred, OMI would be unable to successfully rehabilitate and reorganize itself; that if OMI is forced to prosecute an appeal from an adverse decision, the costs

of such an appeal would substantially diminish OMI's ability to reorganize.

The relief asked for in the complaint is a declaration that the pending administrative proceeding is automatically stayed pursuant to 11 U.S.C. § 362(a), or, if § 362(a) be determined to be inapplicable, then that a temporary and permanent injunction be issued against the entry of a decision in the proceeding pursuant to 11 U.S.C. Section 105.

The defendants after answering the complaint, have now moved for an Order pursuant to Bankruptcy Rule 7012 and FRCP 12(c) to dismiss the complaint on the grounds that the Court "lacks subject matter jurisdiction, and plaintiff fails to state a claim upon which relief can be granted." [1] Thus, the very narrow issue presented for decision is whether the complaint herein, whatever construction is given it, either fails to state a cause of action or states one outside the jurisdiction of the Court. As the Second Circuit noted in *George C. Frey Ready Mixed Concrete v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553, (2d Cir.1977) (footnote omitted).

"For purpose of this motion, we may look only at the pleading with all of 'the well-pleaded material facts alleged in the complaint ... taken as admitted.' *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir.1974), and the complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)."

The Government claims that the exceptions to the automatic stay contained in § 362(b)(4) and § 362(b)(5) by their own terms, place the pending DOL proceeding outside the scope of the stay, and, therefore, the complaint must be dismissed.

With respect to the alternative request for injunctive relief, the Government contends that no discretionary relief is available under 11 U.S.C. § 105(a), because no assets of the estate are threatened.

No doubt, the Government has been compelled to take this position by the fact that despite the filing of the Chapter 11 proceeding and in the face of the specific request for a declaration that § 362(a) applies, a decision has been rendered in the administrative proceeding pending when the petition was filed. Deputy Chief Judge E. Earl Thomas, who decided the case, did not overlook the bankruptcy proceeding, rather he held that the automatic stay did not apply. *In re Matter of Raymond J. Donovan, Secretary of Labor v. Organized Maintenance, Inc., U.S. Dept. of Labor*, Case No. 83–SCA–124 (Dec. 4, 1984). To quote his opinion: "The debarment proceeding is similar to police and regulatory powers in that debarment protects the public from employers who do not abide by their government contracts.... Accordingly, the debarment proceeding is not stayed, and any money judgment rendered in this decision may be enforced to the extent of funds withheld from Respondents [the debtors] designated as allocable to underpayments of fringe benefits covered under the complaint."

The first issue to be decided is whether § 362(a) applies. If it does, then it becomes academic whether or not this Court should exercise its discretion under 11 U.S.C. § 105 to stay further steps by the Secretary of Labor to enforce the decision that was rendered subsequent to the filing of the Chapter 11 petition herein.

■ We start out with the principle that actions taken in violation of the automatic stay are void. *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982), and cases there cited. If, as the

---

**1.** Fed.R.Civ.P. 12(c) allows a party to "move for judgment on the pleading" "[a]fter the pleadings are closed but within such time as not to delay the trial." Pursuant to Rule 12(h)(2), a Rule 12(c) motion may be used to raise the "defense of failure to state a claim upon which relief can be granted," a defense ordinarily raised under Rule 12(b)(6) before the pleadings are closed. B.Rule 7012 makes FRCP 12(b)–(h) applicable to adversary proceedings in the Bankruptcy Court.

debtors contend, § 362(a) is applicable to the proceeding brought under the 41 U.S.C. § 352, then the decision rendered subsequent to the filing of the petition herein is null and void.

Subsection (a) of Section 362 reads in part:

(a) Except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate, or to exercise control over procedures of the estate; ....

Subsection (b) provides insofar as pertinent:

(b) The filing of a petition does not operate as a stay—...

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's power or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;"

The position of the Government necessarily has to be that an administrative proceeding is brought to enforce the Secretary of Labor's "police or regulatory power."

The "Service Contract Act of 1965" is one of a series of acts, of which the Walsh-Healey Public Contracts Act was the first, setting up labor standards for government contractors.

The Senate Report described the legislation as follows:

"The purpose of this bill is to provide labor standards for the protection of employees of contractors and sub-contractors furnishing services to or performing maintenance services for Federal agencies. The service contract is the only remaining category of Federal contracts to which no labor standards protection applies. Federal construction contracts require compliance with labor standards under the Davis-Bacon Act and related statutes. Federal supply contracts also provide labor standards under the Walsh-Healey Public Contracts Act.

The bill is applicable to advertised or negotiated contracts in excess of $2500, the principal purpose of which is to furnish services through the use of service employees." S. Report No. 798, 89 Cong., 1st Sess. 1965, reproduced in 1965 U.S. Code Cong. & Admin. News, 3737.

The statute is simple in its organization. Section 351 contains the provisions with respect to wages, fringe benefits, etc., which must be included within any contract with the United States. Section 352 provides that in the event the contract terms required by § 351 are not respected, the contractor becomes liable for a sum equal to the amount due any employee and so much of the money as is due the contractor may be withheld and paid such employees directly by the Federal agency involved. In the event that amount provides insufficient to cover the under-payments, § 354(b) authorizes the United States to bring an action against the contractor in any court of competent jurisdiction and to recover the difference for the ultimate benefit of the underpaid employees. In addition, § 354(a) authorizes the Controller General to distribute to agencies of the United States, names of persons found to have violated the Chapter and prohibits any contract be-

ing awarded such persons for three years after the date after a firm is so listed in such publication. Section 353 authorizes the Secretary of Labor to enforce the Chapter; to "issue orders, hold hearings, and make decisions based upon findings of fact, and take other appropriate action hereunder."

Pursuant to the authority given to the Secretary of Labor to enforce the provisions of the law, the Secretary of Labor has established procedures for determining whether or not contractors have observed their contracts and to what extent there has been under-payment of compensation due any employee. 29 C.F.R. Parts IV and VI.

As this summary indicates, an administrative proceeding under the regulations implementing the Public Service Act of 1965, may result in a determination of liability, collectible both by set-off against monies due the contractor and by subsequent action in the courts. It has been held that in any such judicial proceeding to collect the amount found in the administrative proceeding to have been underpaid, the burden is on the defendants to show that the findings of the administrative judge were not supported by a preponderance of the evidence. *United States v. Powers Building Maintenance Co.*, 336 F.Supp. 819 (D.C.Okla.1972). The DOL proceeding may also result in a three-year debarment from participation in government contracts.

Is an administrative proceeding having as one of its purposes to establish how much the Government will withhold, or try to collect, from a government contractor to cover under-payments to the contractors' employees the type of proceeding which Congress intended to exclude from the reach of the automatic stay protecting a debtor seeking relief under the bankruptcy laws?

To answer questions of this character, the Courts, taking their cue from the legislative history of § 362, have evolved what is called a pecuniary purpose test, that is the Government seeking to protect an economic interest in the debtor's property.

*State of Missouri v. U.S. Bankruptcy Court*, 647 F.2d 768, 775–76 (8th Cir.1981); *In re Charter First Mortgage, Inc.*, 42 B.R. 380, 382 (B.C.D.J. Ore.1984); *In re Herr*, 28 B.R. 465, 467 (B.C.D. Me.1983).

The emphasis on a pecuniary interest is derived from the remarks of Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights to the House Committee of the Judiciary who explained Congress' intent in enacting Section 362(b)(4) as follows:

"Section 362(b)(4) indicates that the stay under Section 362(a)(1) does not operate to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power.

This section is intended to be given *a narrow* construction in order to permit governmental units to pursue actions to protect the health and safety and *not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.* 124 Congressional Record H11089, U.S. Code Cong. Admin.News 1977, 660–61 reprinted in 1978 [Emphasis supplied]

These remarks amplify the explanation given in the Committee Reports:

"Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of a debtor are in the possession and control of the bankruptcy court, and since they constitute a

fund out of which all creditors are entitled to share enforcement by a governmental unit of a money judgment should give it preferential treatment to the detriment of all other creditors." House Report No. 95–595, 95th Cong. U.S.Code Cong. & Ad.News 1978, 5787, 5963, 6299 reprinted in 1978; S.Rep.No. 95–989, 95th Cong., U.S. Code Cong. & Admin. News, 1978 at 5787, 5838.

In terms of the line drawn by Congressman Edwards, the administrative proceeding brought to establish and lay the ground work for the collection by way of set-off or through judicial action of unpaid wages or fringe benefits appears to be not one "to protect the health and safety" of anyone but "to protect the pecuniary interest [of the contractors' employees] in property of the debtor or property of the estate". As such, there seems no reason why it should not be encompassed within the automatic stay, why employee-creditors should be put in a preferred position over other creditors, by giving the Secretary of Labor the freedom to proceed denied such other creditors. That a possible consequence of the DOL proceeding is debarment as well as debt collection would not seem enough to make the stay inapplicable.

What is involved here is not "police" power as that term is ordinarily understood. Nor does the Service Contract Act of 1965 engage the regulatory power of the United States. Indeed, in *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 128, 60 S.Ct. 869, 877, 84 L.Ed. 1108 (1940), which involved the Walsh-Healey Act, 41 U.S.C. § 35 *et seq.*, of which the Service Contract Act of 1965 is a direct descendant, Mr. Justice Black said, "The Act does not represent an exercise by Congress of regulatory power over private business or employment." For that reason, the Supreme Court held that public contractors had no standing to challenge how the Secretary of Labor carried out his responsibilities under the Act.

The wages and fringe benefits which are the subject matter of the DOL administrative proceeding here involved are those due the debtor's employees for work they performed, they are not sanctions imposed for violation of law, like back pay awarded employees discriminatorily discharged in violation of the National Labor Relations Act. Accordingly, the cases holding that National Labor Relations Board proceedings fall outside the automatic stay are inapplicable. *NLRB v. Evans Plumbing Co.*, 639 F.2d 291 (5th Cir.1981); *Ahrens Aircraft Inc. v. NLRB*, 703 F.2d 23 (1st Cir.1983); *In re Bel Air Chateau Hosp. Inc.*, 611 F.2d 1248 (9th Cir.1979); *In re Shippers Interstate Serv. Inc.*, 618 F.2d 9 (7th Cir.1980).

Except that liability is established by an administrative proceeding initiated by the Government, the wages and fringe benefits owed the contractors' employees and the contractors' liability therefor seem no different from the unpaid wages and fringe benefits which many debtors entering bankruptcy owe their employees. The administrative proceeding appears to concern itself with the same matters as are the province of the bankruptcy court, i.e., the debts owed the debtor's creditors and their payments. The potential for conflict is obvious. This appears then to be the type of situation where the § 362 stay is needed.

The legal precedents provide no clear answer. *In the Matter of Joydon*, 4 BCD 166, 168 (B.C.D. Ohio 1982), which was brought under the Bankruptcy Act, the Court held that the automatic stay imposed by former B. Rule 401 did not apply to a case, like the present one, but that the Court had the "final determination as to the validity of the claim as filed for wages and the priority to be allowed under the Bankruptcy Act". Thus, the Court did not interfere with the pending administrative proceeding to determine liability under the Service Contract Act of 1965, but reserved, for itself, final resolution of certain issues.

In *In re LaPorta*, 26 B.R. 687 (B.C.N.D. Ill.E.D.1982), the Secretary of Labor assumed the applicability of § 362 to a dispute over compliance with the Service Contract Act of 1965, exactly contrary to the position taken here, and took the unusual

step of requesting the bankruptcy court to re-open a closed Chapter 7 case, so that it could proceed with a hearing to determine the ownership of the funds of the debtor held by it. The Bankruptcy Judge held that the burden lies on the debtor to show why the case did not come within the exceptions to the automatic stay, and the debtor not having discharged that burden, found the § 362 stay to be inapplicable. However, the case from which the court derived the principle that the burden lies on the debtor to show the inapplicability of the stay, *Marshall v. International Formal Wear Inc.*, 6 B.C.D. 477 (S.D.Ga.1980), was not in point. It involved an action in equity to restrain defendants from withholding payments of back wages due under the Fair Labor Standards Act of 1938, and to receive an equal additional amount as liquidated damages. But it is clear that the Fair Labor Standards Act of 1938 and the sanctions arising out of it are fairly embraced within the terms "police or regulatory power", so that the Court could properly put the burden on the debtor to show why the statute's clear language was not controlling. Where, however, the situation is more ambiguous, as here, the debtor should not be asked to carry that burden.

▮ It is worth emphasizing that we are not dealing here with the issue as whether or not there should be relief from the automatic stay. It may well be that some modification of the stay might have been appropriate had the Secretary of Labor sought it, but the question now before the Court is whether or not the pending proceeding lies entirely outside the scope of the automatic stay. In the view of the Court, it does not. An enforcement proceeding under the Service Contract Act of 1965 is not an action to enforce the police or regulatory power of the United States, but to determine and collect ordinary obligations incurred by a contracting employer to his employees. It is a proceeding which squarely involves a pecuniary interest of the employees and

the employer, and as such, it is not excepted from the § 362 stay by § 362(b)(4) or § 362(b)(5).

That conclusion is dispositive of the present motion. However, some discussion of the alternative relief asked in the complaint under 11 U.S.C. § 105 appears appropriate.

11 U.S.C. § 105 supplements § 362 as Congress noted when it enacted the Code.[2] The House Reports explain the interaction between these two sections as follows:

"Subsection (b) lists five exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction.

The court has *ample other* powers to stay actions not covered by the automatic stay. *Section 105*, of proposed title 11, derived from Bankruptcy Act § 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The bankruptcy courts are brought within the scope of the All Writs Statute, 28 U.S.C. 1651 (1970), and are given the powers of a court of law, equity, and admiralty (H.R. 8200, & 243(a), proposed 28 U.S.C. 1481). Stays of injunction issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. *There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine on a case-by-case whether a particular action which may be harming the estate should be stayed.*

---

**2.** 11 U.S.C. § 105 authorizes the Court to issue any order, process or judgment that is necessary to carry out the provisions of Title 11. Under

the order of reference by the District Court to me, it has given this Court power to act under this Section.

*With respect to stays issued under other powers*, or the application of the automatic stay, to governmental actions, *this section and the other sections mentioned are intended to be an express waiver of sovereign immunity, of the Federal government*, and an assertion of the bankruptcy power over State governments under the Supremacy Clause notwithstanding a State's sovereign immunity." H.Rep.No. 95–595 at 342, see also S.Rep.No. 95–989 at 51, U.S.Code Cong. & Admin.News 1978, at 5837, 6298. (Emphasis supplied)[3]

 The defendants are not on sound ground when they urge that there must be some property of the debtor involved before recourse can be had to 11 U.S.C. § 105. The cases impose no such requirement. The potential impact on the debtor of the pending DOL proceeding is of a character that has supported intervention by the bankruptcy court in other cases. What is at issue in the DOL proceeding is the establishment of the amount of a claim against the estate, to be enforced by set-off and collection efforts, plus the disqualification from the privilege of bidding on a government contract for three years. Without determining whether or not the conditions exist here for issuing either a preliminary, or permanent, injunction pursuant to 11 U.S.C. § 105, it is uncontrovertible that the power to do so lies in the Court.

Thus, for example, in *In re Vantage Petroleum Corp.*, 25 B.R. 471 (B.C.E.D.N.Y.1982), where Bankruptcy Judge Hall concluded that administrative proceedings under the Economic Regulatory Administration of the Department of Energy were not automatically stayed, he nonetheless stayed them under § 105, finding a sufficient threat to the estate to justify § 105 relief.

Similarly, in *Matter of Theobald Industries Inc.*, 16 B.R. 537 (B.C.D.N.J.1981), the court, recognizing a difference of authority

as to the applicability of the automatic stay to NLRB's proceedings brought to recover employees' vacations and severance pay, enjoined further proceedings pursuant to § 105.

Also relevant to the issue of jurisdiction is the *Matter of Nat'l Hospitals v. Institutional Builders*, 658 F.2d 39, 43 (2d Cir. 1981), where the Second Circuit held that the City of New York's intended revocation of a "Certificate of Occupancy" for a nursing home was stayed by the automatic stay under former B.Rule 12–43. In that case, the Second Circuit noted that while the Code may have removed certain types of local regulation from the automatic stay, it did not eliminate the bankruptcy court's power to enjoin such state action where the circumstances warranted. The property there involved a "Certificate of Occupancy", was as ephemeral as the debtor's right to bid on government contracts for the next three years.

Without at this time addressing what relief, if any, the facts may show the debtor to be entitled to claim under 11 U.S.C. § 105, the challenge to the complaint under FRCP 12(c) must fail.

For the foregoing reasons, the Motion to Dismiss is denied.

---

**3.** The Court believes that it has power under 11 U.S.C. § 105, and under the order of reference from the District Court to grant whatever injunctive relief is appropriate despite the uncertain vitality of 28 U.S.C. 1481 as a result of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98th Cong.2d Sess. (1984).