804 F.2d 934
 123 L.R.R.M. (BNA) 2905, 55 USLW 2315,
105 Lab.Cas. P 12,089,
Bankr. L. Rep. P 71,520
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
EDWARD COOPER PAINTING, INC., and Cooper & Cooper Painting,
an alter ego, Respondent.
 No. 85-5735.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 9, 1986.
Decided Nov. 6, 1986.
 
 Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Karen Cordry (argued), Washington, D.C., Emil C. Farkas, Director, Region 9, N.L.R.B., Cincinnati, Ohio, for petitioner.
 John C. Anggelis, W. Thomas Bunch (argued), Bunch & Brock, Lexington, Ky., C. Hunter Daugherty, Nicholasville, Ky., for respondent.
 Before ENGEL and RYAN, Circuit Judges and CONTIE*, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 This case involves an NLRB petition to enforce a decision and order finding unfair labor practices against respondent Edward Cooper Painting, Inc. (the Corporation), and its alleged alter ego, Cooper & Cooper Painting (the Partnership). The NLRB unfair labor practice proceeding was filed because the Corporation unilaterally terminated the collective bargaining agreement it had with the International Brotherhood of Painters and Allied Trades of the United States and Canada, Local 768 (the Union). After the NLRB proceeding was initiated, the Corporation filed for bankruptcy. The three primary issues presented are: (1) whether this court has jurisdiction to determine whether the automatic stay of judicial proceedings created by 11 U.S.C. Sec. 362(a)(1) when the Corporation filed for bankruptcy applied to the NLRB proceeding; (2) whether the NLRB proceeding was stayed by operation of Sec. 362(a)(1); and (3) whether the NLRB's order is enforceable against the Corporation, or against the Partnership, its alleged alter ego.
 
 
 2
 For reasons discussed more fully below, we conclude: (1) we have jurisdiction to determine whether the automatic stay applied to the NLRB proceeding; (2) the proceeding was excepted from the stay by operation of 11 U.S.C. Sec. 362(b)(4); and (3) the NLRB's order is enforceable against both the Cooper corporation and the Cooper & Cooper partnership. Therefore, the NLRB's decision is affirmed.
 
 
 3
 The findings of fact of the NLRB are conclusive if supported by substantial evidence. 29 U.S.C. Sec. 160(e). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The following facts are adopted from the Board's decision, and are supported by substantial evidence.
 
 
 4
 Henry Edward Cooper was the only shareholder and sole manager of the Corporation, which did business in Lexington, Kentucky. In 1981, he employed as many as six people, including his son, David Cooper, who was working foreman of the Corporation's painting operations. Prior to 1981, the Corporation negotiated and signed two collective bargaining agreements with the Union.[1] Each agreement had a term of two years, and expired on March 31, 1980, and March 31, 1982, respectively. In 1981, when one of its major customers decided to accept non-union bids for painting jobs, the Corporation experienced financial difficulty. By July 23, 1981, business was declining and the firm had only three employees, Henry Edward Cooper, David Cooper, and Walter Young, Jr.
 
 
 5
 On July 24, 1981, the Corporation unilaterally terminated both collective bargaining agreements effective August 1, 1981. This action violated the agreements and was an unfair labor practice in violation of the National Labor Relations Act. Henry Cooper informed Walter Young, Jr., that he could continue to work if he was willing to work under non-union conditions. Young declined the offer, and the Union filed an unfair labor practice complaint with the NLRB. On September 17, 1981, the NLRB filed unfair labor practice charges against the Corporation, seeking backpay on behalf of Walter Young, Jr., and other unnamed employees, as well as equitable relief.
 
 
 6
 After termination of its relationship with the Union, the Corporation continued in the painting business. The business was operated essentially the same as before the union agreement was terminated, except that non-union employees replaced union employees. The offices, secretary, and telephone number of the business remained the same. The same type of painting work was performed. David Cooper continued as foreman, and Henry Edward Cooper remained owner and operator.
 
 
 7
 In November of 1981, Henry Edward and David Cooper began operating their business as a partnership under the name Cooper & Cooper Painting. After this organizational change, David Cooper received a salary instead of an hourly wage, participated in partnership decisions, and shared in the Partnership's profits on a forty percent basis. The Partnership continued the painting business previously carried on by the Corporation.
 
 
 8
 On December 4, 1981, the Corporation filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code. Although the Board had filed proof of claims with the bankruptcy court in the aggregate amount of $120,296, representing backpay due Walter Young, Jr., and other unnamed employees, the Corporation had been liquidated and the estate closed by order of the bankruptcy court by the time the Board rendered its decision and order on February 12, 1985.
 
 
 9
 On May 17, 1982, Henry Edward Cooper, an individual, filed for bankruptcy under Chapter 7 of the Bankruptcy Code and was discharged in bankruptcy on December 30, 1982, prior to the Board's decision and order. While the NLRB had notice of Henry Edward Cooper's personal bankruptcy, the Partnership did not raise his bankruptcy as a defense to enforcement of the NLRB's order.
 
 
 10
 The Cooper & Cooper partnership ended operations on November 4, 1982. Apparently, its business has been taken over by a new corporation.
 
 
 11
 The Board's order[2] requires the Corporation, and its alter ego, the Partnership, to: (1) cease and desist certain unfair labor practices, including abrogation of the terms of the collective bargaining agreement the Corporation had with the Union and termination of employees solely because they were members of the Union; (2) recognize and bargain with the Union as the designated bargaining representative in a bargaining unit defined in the Board's order; (3) abide by the terms of the abrogated collective bargaining agreement; (4) reimburse all employees and the Union for any losses suffered; (5) reinstate Walter Young, Jr., with backpay; and (6) post NLRB-drafted notice of the foregoing.
 
 I.
 
 12
 The first issue for consideration is whether this court, or the bankruptcy court, has jurisdiction to determine whether the automatic stay provision of 11 U.S.C. Sec. 362(a)(1) applies to the NLRB proceeding. The automatic stay provision of the Bankruptcy Code, 11 U.S.C. Sec. 362, provides, in pertinent part:
 
 
 13
 "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of--
 
 
 14
 "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 
 
 15
 "(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 "(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay--
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 "(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
 
 
 22
 "(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power...."
 
 
 23
 When the Corporation filed for bankruptcy, Sec. 362(a)(1) automatically stayed "the commencement or continuation ... of a judicial, administrative, or other proceeding against the debtor...." In addition, Sec. 362(a)(2) prohibited the enforcement of any judgment against the Corporation which was obtained prior to the filing of the petition in bankruptcy. However, Sec. 362(b)(4) provides that the automatic stay does not affect "an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power...." Finally, Sec. 362(b)(5) allows governmental units to enforce any judgment obtained in the exercise of their police or regulatory power, with the exception of a money judgment.
 
 
 24
 Respondent contends that the bankruptcy court has exclusive jurisdiction to determine the coverage, modification, or termination of the automatic stay. Therefore, respondent argues, we should "remand" this case to the bankruptcy court for a determination of whether the NLRB proceeding was excepted from the stay. We disagree, because the applicability of the automatic stay to an unfair labor practice proceeding is an issue of law within the competence of this court. See In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2d Cir.1985).
 
 
 25
 Respondent cites our decision in NLT Computer Services Corp. v. Capital Computer Systems, Inc., 755 F.2d 1253 (6th Cir.1985) for the proposition that only the bankruptcy court has jurisdiction to determine the applicability of the exceptions to the automatic stay. Respondent places particular reliance on our statement in NLT Computer that "[t]he stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted." Id. at 1258.
 
 
 26
 Respondent's reliance on this passage is misplaced because the statement was grounded on the assumption that the stay otherwise applied to the non-bankruptcy judicial proceeding, and that the bankruptcy court therefore was the proper court to determine whether the stay should be lifted. In the course of providing the procedural posture of the case, we stated:
 
 
 27
 "In an opinion filed on January 31, 1983, the district court held that it was not prohibited from proceeding upon the merits of the government's claim despite the automatic stay provisions of 11 U.S.C. Sec. 362, because it possessed the power to withdraw the order of reference of the involuntary proceedings to the bankruptcy court and then lift the automatic stay provisions which would otherwise apply."
 
 
 28
 Id. at 1256 (emphasis added). None of the litigants in NLT Computer asserted that the non-bankruptcy judicial proceeding was excepted from the automatic stay. The statement on which respondent relies was made in a non-bankruptcy judicial proceeding that was not even arguably excepted from the automatic stay.
 
 
 29
 Here, the NLRB contends that its proceeding against the Corporation is excepted from the Sec. 362(a)(1) automatic stay because the NLRB proceeding is "an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power," and, as such, excepted from the automatic stay by Sec. 362(b)(4).
 
 
 30
 The decision of the Second Circuit in Baldwin-United Corp. is the only case which has explicitly held that the district and circuit courts have jurisdiction to determine the applicability of the automatic stay. However, in the context of an NLRB petition for enforcement of an unfair labor practice decision and order, two other circuit courts have assumed they had jurisdiction to answer the question and proceeded directly to the merits. See Ahrens Aircraft, Inc. v. NLRB, 703 F.2d 23 (1st Cir.1983); NLRB v. Evans Plumbing Co., 639 F.2d 291 (5th Cir.1981). Evans Plumbing was the first circuit court decision to hold that an NLRB unfair labor practice proceeding was excepted from the automatic stay under Sec. 362(b)(4).
 
 
 31
 We agree with the statement by the court in Baldwin that:
 
 
 32
 "The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."
 
 
 33
 Baldwin-United Corp., 765 F.2d at 347 (footnote omitted). We hold that we have jurisdiction to determine whether the NLRB unfair labor practice proceeding was subject to the automatic stay.
 
 II.
 
 34
 Respondent next argues that the NLRB's order is void because the NLRB failed to petition the bankruptcy court for relief from the automatic stay before it proceeded with the unfair labor practice hearing. It also argues that the NLRB was required to petition the bankruptcy court for relief from the stay even though it believed that its proceeding was excepted from the stay. This contention has no support in the case law, and we conclude that a governmental unit which determines that its police power or regulatory proceeding is excepted from the automatic stay under Sec. 362(b)(4) is not required to petition the bankruptcy court for relief from the stay prior to continuing its proceeding.
 
 
 35
 Section 362(b)(4) provides that the filing of a petition in bankruptcy "does not operate as a stay ... of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." The statute provides that governmental actions to enforce police or regulatory powers are automatically excepted from the operation of the automatic stay. There is no occasion therefore to seek relief from a stay which has no application to the proceeding in question.
 
 
 36
 In addition, the legislative history of the Bankruptcy Act of 1978 evinces a congressional intent that "an action by a governmental unit seeking to enforce its regulatory power is not automatically stayed by reason of the provisions of subsection (b)(4) but might nonetheless be enjoined by the [bankruptcy] court in appropriate circumstances." 2 Collier on Bankruptcy p 362.05 at 362-40 (15th ed. 1985).[3]
 
 
 37
 We hold that the NLRB, acting on the belief that its unfair labor practice proceeding was excepted from the operation of the automatic stay, permissibly proceeded with the hearing without obtaining relief from the stay in the bankruptcy court. However, the NLRB proceeded at its own risk. If it was later determined that the proceeding was not excepted from the automatic stay, the entire NLRB proceeding would be void ab initio as an act taken in violation of the stay.[4] Nonetheless, an action by a governmental unit in the exercise of its police or regulatory powers is not void merely because it was taken in the belief that it was excepted from the automatic stay.
 
 
 38
 Section 362(b)(4) explicitly provides that proceedings undertaken by a governmental unit in the exercise of its police power are unaffected by the automatic stay.[5] Only if we find the action did not fall within the ambit of the Sec. 362(b)(4) exception to the automatic stay will we declare the governmental unit's action void.
 
 
 39
 Arguably, a more orderly procedure would require the NLRB to petition the bankruptcy court for permission to proceed. "[C]entralizing construction of the automatic stay in the Bankruptcy Court" would result in "uniformity on issues of law," and would assist that court's effort to "assure equality of treatment among creditors." Baldwin-United Corp., 765 F.2d at 349. However, Sec. 362 does not impose such a requirement, and the legislative history of that section provides that "[b]y excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay." S.Rep. No. 989, 95th Cong., 1st Sess. (1978), reprinted in 1978 U.S.Code Cong. & Ad.News at 5837.
 
 
 40
 Our conclusion does not leave the trustee or debtor-in-possession unable to halt the unfair labor practice proceeding. The legislative history of the Bankruptcy Act of 1978 states:
 
 
 41
 "The Court has ample other powers to stay actions not covered by the automatic stay. Section 105, of the proposed title 11, derived from Bankruptcy Act Sec. 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11."
 
 
 42
 S.Rep. No. 989, 95th Cong., 1st Sess. (1978), reprinted in 1978 U.S.Code Cong. & Ad.News at 5837. The bankruptcy courts have concluded that 11 U.S.C. Sec. 105 gives them the power to stay NLRB proceedings that are excepted from the operation of the automatic stay by Sec. 362(b)(4) if the assets of the debtor's estate are threatened. See, e.g., In re GHR Energy Corp., 33 B.R. 449, 450-51 (Bankr.D.Mass.1983). Cf. In re Organized Maintenance, Inc., 47 B.R. 791, 797-98 (Bankr.E.D.N.Y.1985).
 
 III.
 
 43
 Respondent also argues that the NLRB proceeding was "an attempt to enforce a money judgment" and was therefore subject to the automatic stay by operation of Sec. 362(b)(5). We disagree, and hold, on the facts of this case, that the NLRB unfair labor practice proceeding was excepted from the operation of the automatic stay under Sec. 362(b)(4) and was not an attempt to enforce a money judgment under Sec. 362(b)(5). The NLRB proceeding was wholly unaffected by the automatic stay which went into effect when the Corporation filed for bankruptcy.
 
 
 44
 Not every action or proceeding by a governmental unit is excepted from the automatic stay. The legislative history to the Bankruptcy Act of 1978 provides that, under Sec. 362(b)(4),
 
 
 45
 "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay."
 
 
 46
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6299. The courts which have considered this issue have generally concluded that NLRB unfair labor practice proceedings are excepted from the automatic stay by Sec. 362(b)(4).[6] In In re Nicholas, Inc., 55 B.R. 212, 214 (Bankr.D.N.J.1985), the court summarized "the prevailing view among several other circuits":
 
 
 47
 "[T]his Court necessarily reaches the conclusion that the automatic stay is inapplicable herein. The N.L.R.B. is a governmental unit exercising its police or regulatory powers. By the prevailing interpretations of the exceptions to the automatic stay, injunctive relief is unavailable against the Board on that ground. Moreover, the Court notes that the complained of proceedings have not yet reached the stage of enforcing a money judgment. Falling short of such prohibited activity, there is no basis to deny the exception to the stay."
 
 
 48
 The bankruptcy courts have not yet developed a consistent test for determining whether an action by a particular governmental unit falls within the automatic stay. However, even under the narrowest reading of Sec. 362(b)(4), the NLRB unfair labor practice proceeding in this case is within the exception.
 
 
 49
 Generally, one of two tests has been applied to determine whether a particular governmental action was excepted from the automatic stay: the pecuniary purpose test or the public policy test. See In re Herr, 28 B.R. 465, 468-69 (Bankr.D.Me.1983). Under the pecuniary purpose test, the court asks whether the governmental proceeding relates primarily "to the protection of the [government's] pecuniary interest in the debtors' property and not to matters of public safety and health." In re State of Missouri, 647 F.2d 768, 776 (8th Cir.1981), cert. denied, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). The former purpose would subject the proceeding to the stay provision of Sec. 362; the latter would not. In contrast, the public policy test "distinguishes between proceedings that effectuate public policy and those that adjudicate private rights: only the former are excepted from the automatic stay." In re Herr, 28 B.R. at 468.
 
 
 50
 The NLRB proceeding challenged herein passes muster under either test. First, an NLRB unfair labor practice proceeding is one which imposes sanctions on an employer for violations of the federal labor law. The Board's decision in this case is an adjudication that the Corporation violated federal labor law embodied in the National Labor Relations Act. It is not a proceeding for the primary purpose of protecting the government's claim of entitlement to a pecuniary interest in the debtor's estate. Second, the NLRB does not proceed on behalf of private persons:
 
 
 51
 "[N]o private action arises under the Labor Act. Thus the NLRB is not functionally a forum where private parties may present labor disputes. Rather the NLRB determines which complaints it will act upon in its own name in furthering the policies of the federal labor laws."
 
 
 52
 In re Adams Delivery Service, 24 B.R. 589, 592 (Bankr. 9th Cir.1982) (citation omitted). Congress has entrusted the NLRB with enforcement of the nation's labor laws, and has also committed "the matter of adjudicating unfair labor practices to the jurisdiction of the N.L.R.B." In re Nicholas, Inc., 55 B.R. at 215. See also, Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 264-65, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940).
 
 
 53
 In NLRB v. Evans Plumbing Co., the court stated:
 
 
 54
 "The crucial issue is whether the NLRB is a governmental unit and whether this action is one to enforce police or regulatory powers. It is clear that the NLRB is a governmental unit. This action was undertaken to enforce the federal law regulating the relationship between employer and employee. We can safely conclude therefore that this is an exercise of police or regulatory powers which places it within the Sec. 362(b)(4) exemption to the automatic stay."
 
 
 55
 639 F.2d at 293 (footnote omitted). We agree with the Evans Plumbing court, and hold that the NLRB's unfair labor practice complaint against respondent was excepted from the automatic stay under Sec. 362(b)(4).
 
 
 56
 Respondent argues that the NLRB proceeding against it was an attempt to reduce an unfair labor practice charge to a dollar amount for the benefit of private persons, namely the Union and those employees who lost wages. We reject this argument, primarily for the reason that "once proceedings are excepted from the stay by section 362(b)(4), courts have allowed governmental units to fix the amount of penalties, up to and including entry of a money judgment." In re Herr, 28 B.R. at 469 (emphasis added). The legislative history of the statute states that Sec. 362(b)(4) excepts a governmental unit from the automatic stay where it is "attempting to fix damages for violation" of a police or regulatory law.
 
 
 57
 At most, the NLRB unfair labor practice proceeding against respondent resulted in the entry of a money judgment. Section 362(b)(5) provides that only attempts to enforce money judgments are subject to the automatic stay. In Penn Terra Ltd. v. Department of Environmental Resources, 733 F.2d 267, 275 (3d Cir.1984), the court examined the meaning of the phrase "enforcement of a money judgment," as it is used in Sec. 362(b)(5):
 
 
 58
 "Quite separate from the entry of a money judgment, however, is a proceeding to enforce that money judgment. The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment. It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5)."
 
 
 59
 We find the Penn Terra analysis of Sec. 362(b)(5) persuasive, and hold that the Board's determination that the Corporation owed backpay to its former employees was excepted from the automatic stay by operation of Sec. 362(b)(4). We thus affirm the entry of a money judgment, but do not enforce that judgment. See In re D.M. Barber, Inc., 13 B.R. 962, 963-64 (Bankr.N.D.Tex.1981).
 
 IV.
 
 60
 Respondent argues that Henry Edward Cooper's discharge in bankruptcy bars enforcement of the Board's order against the Cooper & Cooper partnership. The Board argues that we should not review this claim because respondent failed to present it to the Board as required by 29 U.S.C. Sec. 160(e).[7] We conclude that this issue was presented to the Board, in effect, when respondent filed a "Plea in Abatement due to Bankruptcy." The Board was cognizant of Henry Edward Cooper's pending bankruptcy proceeding and determined that its proceeding was excepted from the automatic stay. It therefore disregarded respondent's plea in abatement. We hold that this is sufficient to meet the standard of Sec. 160(e).
 
 
 61
 Nonetheless, we affirm the Board's conclusion that its order may be enforced against the Cooper & Cooper partnership. The Partnership was a party to the proceeding below, where it was found to be the alter ego of the Cooper corporation, a conclusion that is supported by substantial evidence.[8] The partnership entity, not Henry Edward Cooper, is the party to this proceeding, and the Board's order is fully enforceable against that entity.[9]
 
 
 62
 For all the foregoing reasons, the Board's decision is AFFIRMED.
 
 
 63
 CONTIE, Senior Circuit Judge, concurring.
 
 
 64
 While I agree with the majority's disposition of this case and its analysis in Parts I, II and III, I do not join in Part IV of the majority's opinion concluding that we have jurisdiction to consider the effect of Henry Edward Cooper's discharge in bankruptcy.[1]
 
 
 65
 Whereas the "Plea in Abatement Due to Bankruptcy" can be construed as drawing into question the issue of the automatic stay, it is clear that the effect of the discharge in bankruptcy was never raised below, probably in view of the fact that the discharges occurred in the course of the proceedings before the Board. The failure of respondent to raise particular issues before the Board deprives this court of jurisdiction to consider such contentions. Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66, 102 S.Ct. 2071, 2082-83, 72 L.Ed.2d 398 (1982). Pursuant to 29 U.S.C. Sec. 160(e), "[e]xtraordinary circumstances for these purposes exist only if there has been some occurrence or decision that prevented a matter which should have been presented to the Board from having been presented at the proper time." NLRB v. Allied Products Corp., 548 F.2d 644, 654 (6th Cir.1977). Since the respondent did not raise the discharge issue in the proceedings below, and there are no "extraordinary circumstances" for having failed to present this issue to the Board, I would conclude that we lack jurisdiction to consider this argument on appeal.
 
 
 
 *
 Honorable Leroy J. Contie took senior status July 1, 1986
 
 
 [1]
 The Corporation was a member of the Blue Grass Chapter of the Painting and Decorating Contractors of America (PDCA), the organization which negotiated the collective bargaining agreements to which the Corporation was a signatory. Henry Edward Cooper participated in the negotiations
 
 
 [2]
 The Board modified the order issued by the ALJ to comply with the Supreme Court decision in NLRB v. Bildisco & Bildisco, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). The Board provided that the corporation would only be required to enforce the collective bargaining agreement through December 4, 1981, the date it filed its bankruptcy petition
 The Bildisco Court held that after filing the petition for reorganization in bankruptcy, the debtor-in-possession is not required to bargain with the union, and may unilaterally terminate its labor contract. In later reviewing the termination of the labor contract, the bankruptcy court would have to "weigh several equitable considerations to vindicate the prior labor contract abrogation." Gregory, The Congressional Response to NLRB v. Bildisco and the Constitutional Subtleties of the Nondelegation Doctrine, 62 U.Det.L.Rev. 245, 246 (1985).
 
 
 [3]
 The legislative history of the police power exception of the automatic stay provides:
 "Subsection (b) lists seven exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction.
 "The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of proposed title 11, derived from Bankruptcy Act Sec. 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity, 28 U.S.C. Secs. 151 and 164 as proposed in Sec. 2266, Sec. 201, and 28 U.S.C. Sec. 1334, as proposed in Sec. 2266, Sec. 216. Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.
 * * *
 "Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.
 "Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors."
 S.Rep. No. 989, 95th Cong., 1st Sess. (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5837-38 (emphasis added).
 
 
 [4]
 See, e.g., Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir.1982) ("Actions taken in violation of the automatic stay are void and without effect."); In re Potts, 142 F.2d 883, 888 (6th Cir.1944), cert. denied, 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945) (state court judgment obtained after effective date of automatic stay is void)
 
 
 [5]
 Our decision in In re Mansfield Tire & Rubber Co., 660 F.2d 1108 (6th Cir.1981), is not to the contrary. There, the Ohio Bureau of Workers' Compensation sought permission to adjudicate worker's compensation claims filed by employees of the bankrupt debtor. The bureau petitioned the bankruptcy court to lift the automatic stay on the basis of the Sec. 362(b)(4) and (5) exceptions. Whether Ohio could process the worker's compensation claims without petitioning for relief from the stay was not at issue. We reversed the judgment of the bankruptcy court and vacated the stay, but we did not hold that a governmental unit exercising its police or regulatory powers must always petition the bankruptcy court for relief from the stay. See D. Cowans, 2 Bankruptcy Law & Practice Sec. 11.3 at 255 (1986)
 
 
 [6]
 See, e.g., NLRB v. Evans Plumbing Co., 639 F.2d 291 (5th Cir.1981); In re Nicholas, Inc., 55 B.R. 212 (Bankr.D.N.J.1985); In re Rath Packing Co., 38 B.R. 552 (Bankr.N.D.Iowa 1984); In re GHR Energy Corp., 33 B.R. 449, 450 n. 4 (Bankr.D.Mass.1983); In re Powell, 27 B.R. 146 (Bankr.W.D.Mo.1983); In re D.M. Barber, Inc., 13 B.R. 962 (Bankr.N.D.Tex.1981). Only one case has concluded an NLRB unfair labor practice proceeding is not exempt. See In re Theobald Industries, 16 B.R. 537, 539-40 (Bankr.D.N.J.1981)
 The Theobald court found that the NLRB proceeding at issue related primarily to pecuniary, rather than governmental, interests, and therefore was not excepted from the automatic stay. The holding of the case, which enjoined the NLRB proceeding, was based on the injunctive power of 11 U.S.C. Sec. 105, rather than Sec. 362.
 
 
 [7]
 Section 10(e) of the Act provides, in pertinent part:
 "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."
 29 U.S.C. Sec. 160(e).
 
 
 [8]
 The alter ego issue is "whether there was 'a true change of ownership * * * or merely a disguised continuance of the old employer.' " NLRB v. Herman Bros. Pet Supply, Inc., 325 F.2d 68, 69 (6th Cir.1963) (quoting Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718 (1942)). This circuit later stated:
 "The criteria which guide the Board's exercise of its discretion to determine if one company is the 'alter ego' of another company are whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership."
 Nelson Electric v. NLRB, 638 F.2d 965, 968 (6th Cir.1981). The Board found that there were only two differences between Edward Cooper Painting, Inc. and the Cooper & Cooper partnership: One, the partnership does not hire union employees. Two, David Cooper acquired an ownership interest in the Partnership, whereas Edward Cooper was the sole owner of the Corporation. Since all other aspects of Edward Cooper Painting, Inc. were carried over to Cooper & Cooper, and the Partnership began operations before the Corporation filed for bankruptcy, the Board's alter ego conclusion is supported by substantial evidence.
 
 
 [9]
 Under Kentucky law, a judgment against the partnership may be enforced against the property of each partner. Kentucky has adopted the Uniform Partnership Act, which provides, in pertinent part:
 "All partners are liable:
 "(1) Jointly and severally for everything chargeable to the partnership under KRS 362.210 and 362.215;
 "(2) Jointly for all other debts and obligations of the partnership...."
 Ky.Rev.Stat.Ann. Sec. 362.220 (Baldwin 1983). "It is ... the general rule that the partnership creditor having obtained a judgment may at his option proceed against joint or separate property or both by way of levy and execution to enforce his judgment." Richardson, Creditors' Rights and the Partnership, 40 Ky.L.J. 243, 256 (1951) (footnote omitted).
 
 
 [1]
 I do not, however, disagree with the majority's conclusion in Part IV that there is substantial evidence to support the Board's finding that Cooper & Cooper is an alter ego of the Cooper Corporation. See NLRB v. Allcoast Transfer, Inc., 780 F.2d 576 (6th Cir.1986)