JOHNSTONE, Chief District Judge.
This appeal concerns a ruling of the bankruptcy court for the Eastern District of Tennessee which held that proceedings by the state of Tennessee to fix civil fines and penalties under the Tennessee Water Quality Control Act of 1977, Tenn.Code Ann. § 69-3-101 et seq., are stayed under 11 U.S.C. § 362.
FACTS
On November 6, 1984, Tennessee’s Commissioner of Health and Environment issued a Complaint against Commerce Oil Company (Commerce) for alleged violations of the Tennessee Water Quality Control Act, Tenn.Code Ann. § 69-3-101 et seq. The Complaint ordered Commerce to cease alleged illegal discharges of brine into Stowers Creek, Morgan County, Tennessee from certain wells and to make repairs to those wells. The Complaint assessed damages in the amount of $1,235.37 and civil penalties in the amount of $15,000.00 against Commerce. On December 13, 1984, Commerce appealed the Complaint to the Tennessee Water Quality Control Board pursuant to Tenn.Code Ann. § 69-3-109(a)(3). On December 20, 1984, Commerce filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee. Thereafter, on March 29, 1985, the state filed a Proof of Claim in the bankruptcy court for the $16,235.37 of fines and penalties which had been assessed against Commerce.
At the appeals hearing before the Tennessee Water Quality Control Board on November 22,1985, Commerce’s attorney contended that the provisions of 11 U.S.C. § 362(a) applied to stay that hearing. He threatened to file a contempt petition in the bankruptcy court unless the state ceased its proceedings. Faced with the contempt threat, the state ceased proceedings and filed this action in the bankruptcy court asking for a determination of whether the “police power” exception to the automatic stay found in § 362(b)(4) applied to the state’s proceedings to fix liability for civil penalties and damages.
The bankruptcy court held that the state’s consideration of remedial measures and injunctive relief was not stayed because such matters were within the “police power” exception to the automatic stay. However, it also held that the state’s review and determination of civil fines and *293 penalties was an action on a claim against the debtor’s estate and was stayed under 11 U.S.C. § 362. The state appealed. The district court affirmed, holding that Tennessee is precluded from assessing and/or collecting money damages from the debtor under 11 U.S.C. § 362, but remains free to exercise injunctive relief and to order remedial steps for the protection and safety of its citizens under § 362(b)(4).
I. MOOTNESS
Before turning to the substance of the state’s appeal, we must consider whether the matter presently before us is moot.
Under the terms of paragraphs 3 and 4 of the bankruptcy court’s Order, Commerce was allowed up to 45 days from the hearing on this matter to object to the state’s claim against the estate. If Commerce did not object, the Order deemed the state’s claim valid and allowed it, rendering “further action by the Board and the Department superfluous.” R. at 78.[1] Commerce made no objection, thus 45 days after the court hearing, the state’s claim was allowed against the estate. At that point, Commerce urges, the application of the § 362 automatic stay to the state’s proceedings became moot.
Under Article II, § 2 of the Constitution, this court only has jurisdiction to hear actual cases and controversies. See Sosna v. Iowa, 419 U.S. 393, 397-403, 95 S.Ct. 553, 556-559, 42 L.Ed.2d 532 (1975). Consequently, we may not decide moot issues. United States v. Alaska S.S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 (1920). However, jurisdiction in this court is not necessarily defeated simply because the order under review has expired. If the underlying dispute between the parties is one “capable of repetition, yet evading review” we may hear the case although it is technically moot. See County of L.A. v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).
In a case such as the one now before us, the capable of repetition doctrine applies if the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and there is a reasonable expectation that the same complaining party would be subject to the same action again. Weinstein v. Bradford, 423 U.S. 147, 148, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); United States v. City of Detroit, 720 F.2d 443, 448-49 (6th Cir.1983). Both conditions are met in the present case.
First, the substance of the lower courts’ ruling in this case was that proceedings by the state to fix civil penalties are not within the police power exception to the automatic *294 stay. Although Commerce may not raise this question again,[2] Tennessee, as regulator, is continually faced with citing other bankrupt debtors for violations of state environmental laws.[3] Because of the continuing effect of the lower court’s decisions, each time the state seeks to fix civil penalties against a bankrupt, it must now apply to the bankruptcy court either for a determination that the automatic stay does not apply to the proceedings, or for relief from the automatic stay. Consequently, there is a reasonable expectation that Tennessee will be subject to this same controversy again within the meaning of the capable of repetition doctrine. See Firefighters Local Union No. 1748 v. Stotts, 467 U.S. 561, 569-72, 104 S.Ct. 2576, 2583-84, 81 L.Ed.2d 483 (1984); Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976); Super Tire Engineering Co. v. McCorkel, 416 U.S. 115, 126-27, 94 S.Ct. 1694, 1700, 40 L.Ed.2d 1 (1974); Marshall v. Occupational Safety & Health Review, 635 F.2d 544, 547-48 (6th Cir.1980); Sarabia v. Toledo Police Patrolman’s Ass’n, 601 F.2d 914, 916 (6th Cir.1979).
Second, the time constraints placed upon the state by the bankruptcy court’s order were simply too short for the substance of the Order, including appellate review, ever to have been completely litigated before the Order ceased of its own accord. The procedural nature of the bankruptcy court’s Order in this case effectively insulated the Order from a substantive appellate review. Consequently, if we decline to address the matter now before us, the state will never be able to appeal the substance of the lower court’s Order and the ruling on this important issue will continue unre-viewed. We believe that this would be a dangerous triumph of form over substance and that this is precisely the type of short term order addressed by the capable of repetition doctrine. See Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976); Super Tire Engineering Co. v. McCorkel, 416 U.S. 115, 126-27, 94 S.Ct. 1694, 1700, 40 L.Ed.2d 1 (1974).
The state in this case seeks a declaration that its actions fall within the exception to the automatic stay. R. at 33. Although the procedural relief of lifting the stay has already been afforded the state, this alone does not moot the state’s claim for declaratory relief. Indeed, since the lower court’s decision casts a “continuing and brooding presence” over the conduct of the state’s affairs, Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974), the state has been and will continue to be affected by the lower court’s ruling. Accordingly, we find under the circumstances presented here that there is a substantial controversy between the parties of sufficient immediacy and reality to warrant our consideration. See Preiser v. Newkirk, 422 U.S. 395, 401-403, 95 S.Ct. 2330, 2334-2335, 45 L.Ed.2d 272 (1975).
Thus, we conclude that this case is not moot and proceed to the merits.
II. THE POLICE POWER EXCEPTION
The courts below ruled that the state’s review of the assessment against Commerce was an action on a claim stayed by 11 U.S.C. § 362(a)(1), but that the state’s consideration of remedial measures and injunctive relief was within the “police power” exception to the automatic *295 We disagree with the lower courts’ stay. views for several reasons.
First, although the provisions of the automatic stay contained in 11 U.S.C. § 362 are quite broad, the automatic stay' is not all-encompassing. In particular, § 362(b)(4) and 362(b)(5) of the automatic stay except both “the commencement or continuation of an action or proceeding” and “the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory powers” from the automatic stay. 11 U.S.C. § 362(b)(4) and (5). Sections 362(b)(4) and (5) comprise the so-called “police power” exception to the automatic stay.
Congress clearly intended for the police power exception to allow governmental agencies to remain unfettered by the bankruptcy code in the exercise of their regulatory powers. As explained in the House Report on § 362(b)(4) and (5):
Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory power. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment.
S.Rep. No. 95-989, 95th Cong., 2d Sess. 52 (1978), reprinted in [1978], U.S.Code Cono. & Ad.News 5787, 5838; H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 343 (1977), reprinted in [1978] U.S.Code Cong. & Ad. News 5963, 6299 (emphasis added). Taking cognizance of the clearly expressed legislative intent of Congress, In re Arnett, 731 F.2d 358, 360 (6th Cir.1984), we have recognized that damages for civil liability may be assessed under section 362(b)(4) for violation of state and federal laws. See e.g., NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 942-43 (6th Cir.1986); U.S. v. Jones & Laughlin Steel Corp., 804 F.2d 348, 351 (6th Cir.1986); In re Kovacs, 717 F.2d 984, 988 (6th Cir.1983), aff'd sub nom Ohio v. Kovacs, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). We find these cases persuasive precedent in the present matter.
Second, we find that the actions of the state in this case were regulatory in nature and therefore fall within the police power exception to the automatice stay. As recognized by the bankruptcy court in In re Wellham, 53 B.R. 195 (Bankr.M.D.Tenn.1985), and as noted by this court in NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934 (6th Cir.1986), there are two tests for determining whether an action by a governmental unit falls within the automatic stay or is excepted under the “police power” exception: the pecuniary purpose test and the public policy test. Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government’s pecuniary interest in the debtors property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay. NLRB v. Edward Cooper Painting, Inc., at 942. Under either test, the state’s actions should have been stayed under 11 U.S.C. § 362 if the state was seeking a monetary sum merely as collection of a debt or as compensation for reclamation it had already performed.
The state’s actions in this case have not been undertaken for primarily pecuniary purposes. Neither the initial assessment, nor the administrative review of the assessment was primarily an adjudication of private rights or interests in the debtor’s estate. The statute under which Tennessee assessed penalties here, the Tennessee Water Quality Control Act, Tenn.Code Ann. § 69-3-101 et seq. (the Act), is primarily *296 remedial in nature. See Big Fork Min. Co. v. Tenn Water Quality Ctrl. Bd., 620 S.W.2d 515, 519-20 (Tenn.App.1981). The express purpose of the Act is
to abate existing pollution of the waters of Tennessee, to reclaim polluted waters, to prevent the future pollution of the waters, and to plan for the future use of the waters so that the water resources of Tennessee might be used and enjoyed to the fullest extent consistent with the maintenance of unpolluted waters.
Tenn.Code Ann. § 69-3-102(b). Under § 69-3-116(c) damages may be assessed for violation of the Act to cover the costs involved in investigating and enforcing the law and in removing, correcting or terminating any pollution. See Tenn.Code Ann. § 69-3-116(c). Under § 69-3-115(a)(2)(D), penalties for violation of the Act may be assessed in light of such factors as whether the penalty imposed will be a substantial economic deterrent to the illegal activity, the amount of damage to the environment and costs of rectifying such damage, the cost of enforcing the law, the severity of the discharge, the effect of the discharge on the receiving waters, the technical and economic reasonableness of reducing or eliminating the discharge and the social and economic value of the discharge source. See Tenn.Code Ann. § 69-3-115 (a)(2)(D)(iMviii).
We do not find the rationale, policy and factors expressed in the Tennessee Water Quality Control Act to be based upon the state’s ownership of or pecuniary interest in the natural resources of Tennessee. Punishing wrongdoers, deterring illegal activity, recovering remedial costs of damage to the environment, providing for the costs of administration and weighing the social and economic value of a discharge source are exercises of the state’s regulatory power to effectuate public policy and are not actions based upon the state’s property interests. Likewise removing, correcting or terminating pollution and determining the severity and effect of discharges on the receiving waters are actions to protect the public health and safety, and are not grounded upon the state’s property interests.
The proprietary or pecuniary reward in assessing penalties under the Act is apparently of only secondary importance to the state. In this regard, although the state contends that if may fix civil liability under § 362(b)(4), it concedes that it may not collect any penalties assessed or any judgment entered by the Board. The state likewise concedes that even if it had been allowed to fix fines and penalties in this case, that it still would have to pursue its claim subject to the jurisdiction of the bankruptcy court. Furthermore, the state points out that any money eventually collected from Commerce for violation of the Act must be placed in a special fund used only for administration of the act and restoration and maintenance of the environment. See Tenn.Code Ann. § 69-3-119.[4] Given the state’s position, it is difficult to see what pecuniary advantage the state sought to gain in the debtor’s estate or what pecuniary purpose would be served by assessing civil liability against Commerce.
We find nothing in the state’s review of the Commissioner’s assessments which would convert the state’s proceedings into an action primarily designed to protect a pecuniary interest. The state proceeding concerned here was an adjudicatory review of the damages and penalties assessed against Commerce by the Commissioner under Tenn.Code Ann. §§ 69-3-107 and 69-3-115. The primary purpose of the hearing was to determine whether and to what extent the Tennessee Water Quality Control Act was violated and to review the damages and penalties assessed by the Commissioner in light of those violations. See Tenn.Code Ann. §§ 69 — 3—105(f); 69-3-109(a)(3). This was a regulatory action in the purest sense. We conclude therefore that both the state’s initial assessment and the state’s review of the assessment were *297 actions to “enforce” Tennessee law within the meaning of § 362(b)(4).
Finally, Commerce warns us that if we hold assessment proceedings within the police power exception to the automatic stay, we will cause needless and unintended expenditure of estate resources because debtors will have the burden of petitioning the bankruptcy court for a stay of the proceedings under 11 U.S.C. § 105(a) to protect the estate. We do not agree with Commerce that requiring the debtor to use § 105 to protect the bankrupt estate from state administrative proceedings imposes any unintended or undue burden on the estate. See S.Rep. No. 95-987, 95th Cong., 2d Sess. 51 (1978), reprinted in [1978] U.S. Code Cong. & Ad.News 5787, 5837; H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 342 (1977), reprinted in [1978] U.S.Code Cong. & Ad. News 5963, 6298 (“By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay.”). Moreover, we decline to adopt Commerce’s premise that preservation of the debtor’s estate is of greater priority in the statutory scheme set forth by Congress in Title 11 than is the enforcement of environmental protection laws explicitly intended to be excepted from the automatic stay. The plain meaning, the structure and the policy behind § 362(b) all indicate otherwise. See Commodity Futures Trading Comm. v. Co Petro Marketing, 700 F.2d 1279, 1283 (9th Cir.1983) (“The policy behind this ‘police or regulatory exception’ to the automatic stay is to prevent the bankruptcy court from becoming a haven for wrongdoers.”).
For the foregoing reasons, we hold that the Tennessee Water Quality Control Board’s proceedings to fix civil liability under the Tennessee Water Quality Control Act of 1977 are within the § 362(b)(4) exception to the automatic stay in bankruptcy. We hereby reverse and vacate the lower courts’ rulings.

.The bankruptcy court held the following in its January 21, 1986 Order:
1. The actions of the Board and the Department which were not the subject of the hearing before this Court, being the consideration of remedial measures and injunctive relief, if any, against the debtor, are not subject to the 11 U.S.C. § 362 automatic stay, pursuant to 362(b)(4).
2. The review of and determination by the Board of the Commissioners' assessment of $15,000.00 civil penalty and $1,235.37 in damages is stayed because it is merely an action on a claim against the debtor which has already been filed against this estate by the State.
3. However, in order for the State to determine if this claim will be disputed, the Court shall require that the debtor object to the State’s claim within a finite and reasonable time period. The State did not suggest that the amount that the Commissioner assessed was improper. There was a suggestion by the debtor that this amount might be increased. The Court will allow the State 15 days from the date of this hearing to amend its claim in this case, if it so desires. The debtor will then have 30 days from the date of the filing of the amended claim or 45 days from the date of this hearing, whichever time is longer, to object to the State’s claim.
4. If no objection to the State’s claim is made by the debtor, the State has a valid claim, thus making further action by the Board and the Department superfluous and resulting in a waste of the debtor's assets. If an objection to the State’s claim is made by the debtor, the Court hereby grants a limited relief from the stay to allow the Board and the Department to determine the appropriate penalty and damages owed by the debtor to the State.
5. The Court is required in cases of this type to look at each one on its merits. Proof of this is found in the diversity of decisions from around the country. In reaching its decision in this matter the court has relied upon its decision in In re Wellham, 53 B.R. 195 (Bankr.M.D.Tenn.1985).

. Commerce’s Chapter 11 proceeding was converted to Chapter 7. R. at 85.

. For example, the state points out that the same civil penalty and damages assessment which is the subject of this litigation was made jointly and severally against Commerce and Commerce’s President, Bill Goodwin. On August 18,1986, Mr. Goodwin filed suit against the Board in the Tennessee Chancery Court for Davidson County, Tennessee, pursuant to Tenn. Code Ann. 4-5-322 and 69-3-111. Mr. Goodwin’s suit seeks judicial review of a Final Decision and Order entered by the Board on June 17, 1986 which approved the assessment of a $15,000.00 civil penalty against him. On October 14, 1986, Mr. Goodwin filed for bankruptcy under Chapter 7, In re William Dean Goodwin, a/k/a William D. Goodwin; Bill Goodwin, U.S. Bankr.M.D.Tenn. No. 286-04363. Because of the Order of the bankruptcy court under consideration here, the proceedings by Mr. Goodwin have been stayed.

. Tenn.Code Ann. § 69-3-119 requires that monies collected as civil penalties be "earmarked, allocated and appropriated to the division of water management of the department of health and environment for the purpose of complyin with the provisions of this part.”