JOURNAL ENTRY AND OPINION.
{¶ 1} This is an appeal by Friendly Green Jr., from his conviction, before Shaker Heights Municipal Acting Judge Cornelia Byrne, following his plea of no contest to a charge of housing noncompliance.[1]
He contends that his discharge in bankruptcy of an underlying debt on his property divested the judge of jurisdiction over the controversy. Additionally, because Bank of New York ("the Bank"), a mortgagee seeking to foreclose on his property, prevented him from entering it to fix the code violations, he claims he no longer "possessed" it and could not be found guilty of housing noncompliance or ordered to remedy the still-existing violations. We affirm.
 {¶ 2} In August, 2000, City housing inspectors examined the exterior of a residence to which Green held title, located at 19413 Scottsdale Boulevard ("the property"), and determined that a number of violations of the City housing code existed. On September 19, 2001, Green filed for Chapter 7 bankruptcy protection. The dilapidated condition of the property and the amount of debt Green owed on it, in combination, made its value inconsequential to the bankruptcy estate and on December 4, 2001, the Bank was granted a relief from stay and the property was abandoned by the bankruptcy trustee so that the Bank could pursue foreclosure proceedings against it. Green received a discharge in bankruptcy on February 12, 2002.
 {¶ 3} In January, 2002, Green was charged with housing noncompliance, but the case was dismissed upon Green's representation that the property no longer belonged to him because the bankruptcy trustee had abandoned it. Upon the City's discovery that he was still the title holder, it refiled a charge of housing noncompliance in May of 2002.
 {¶ 4} Green then attempted to transfer title of the property to the Bank by way of a deed in lieu of foreclosure but, because the Bank purportedly refused the deed and elected to proceed with its foreclosure action, Green continued to hold title to the property.[2] He pleaded no contest to the charge on August 12, 2002, before Judge K. J. Montgomery, and on September 27, 2002, after the parties had briefed the issue of whether he still retained an obligation to remedy the housing code violations, Judge Montgomery ruled that, since Green still held title to the property, he remained responsible for correcting the code violations.
 {¶ 5} Three days later, Acting Judge Cornelia Byrne sentenced Green to forty-five days in jail, a thousand dollar fine and costs, with all jail time and $900 of the fine suspended, and she stayed the sentence for thirty days in order to give him the opportunity to appeal.[3] In November, 2002, Green moved for a reconsideration of the sentence which Judge Montgomery denied, noting that he had filed an appeal to this court. He asserts error in two main arguments set forth in Appendix A.
 I. BACKGROUND. {¶ 6} Chapter Fourteen of the COCSH is the City housing code ("the Code"). For purposes of defining the rights and obligations of owners of property in Shaker Heights, an "owner" of a property is defined, in relevant part, as: "* * * the owner of the premises, including the holder of title thereto subject to a contract of purchase, a vendee in possession, [or] a mortgagee or receiver in possession * * *."[4] When a City housing inspector determines that a property exists in violation of the Code, he may notify an "owner" of the cited violation and direct that it be corrected within a reasonable time not less than ten days.[5] If notice of a violation should go unremedied, a housing inspector may issue another order mandating compliance and may notify the Shaker Heights Law Director of the violation and request that [s]he institute appropriate legal proceedings to enforce compliance.[6] An owner who wishes to appeal a citation of a violation or its responsibility for compliance may appeal from issuance of a notice of violation to the City Board of Housing Code Appeals within thirty days of the issuance of the order, and failure of an owner to file such an appeal in writing results in a waiver of the appeal.[7]
 {¶ 7} Failure to comply with a notice of violation of the Code is a misdemeanor of the first degree, with each day of failure of compliance constituting a separate offense.[8] A misdemeanor of the first degree, if committed by a person, carries with it the potential penalties of six months' imprisonment and a thousand dollar fine.[9] Notwithstanding any criminal prosecution undertaken by the City, the Director of Law has the power to institute legal proceedings to ensure compliance with the Code.[10]
 II. JURISDICTION OF THE MUNICIPAL COURT. {¶ 8} Green first maintains that he received a discharge of his mortgage debt with the Bank, and his bankruptcy filing transferred jurisdiction of all his financial obligations having to do with the property exclusively to the Federal Bankruptcy Court. We disagree.
 {¶ 9} In the case Chao v. Hospital Staffing Services, Inc.,[11]
the Sixth Circuit Court of Appeals neatly summarized the competing considerations affecting the jurisdictions of bankruptcy and other courts over the determination of potential liabilities of a debtor who has filed for bankruptcy as follows:
"Once a bankruptcy proceeding begins in one court, the concurrentjurisdiction of other courts is partially stripped. * * * In addition toexclusive jurisdiction over the bankruptcy proceeding itself, `thedistrict court in which a case under Title 11 is commenced or is pendingshall have exclusive jurisdiction of all of the property, whereverlocated, of the debtor as of the commencement of such case, and ofproperty of the estate.' * * * However, the exclusivity of the bankruptcycourt's jurisdiction reaches only as far as the automatic stay provisionsof 11 U.S.C. § 362. That is, if the automatic stay applies to anaction directed at the debtor or its property, jurisdiction is exclusivein the bankruptcy court. If the automatic stay does not apply —e.g., if an exception to the stay covers the action in question —the bankruptcy court's jurisdiction is concurrent with that of any othercourt of competent jurisdiction. And if the bankruptcy court grantsrelief from the stay with respect to certain property or claims, see11 U.S.C. § 362(d), (e), (f), the bankruptcy court retainsjurisdiction over those matters, although its jurisdiction is concurrentwith that of other courts of competent jurisdiction."[12]
 {¶ 10} If a non-bankruptcy court's initial, independent jurisdictional determination is erroneous, the parties run the risk that the entire action will later be declared void ab initio by the bankruptcy court.[13]
 {¶ 11} Under 11 U.S.C. § 362(a), actions asserting monetary claims against a debtor filing for bankruptcy protection which were or could have been asserted prior to the filing of the bankruptcy are automatically stayed by the bankruptcy filing. However, under11 U.S.C. § 362(b)(1), this automatic stay does not apply to criminal prosecutions. 11 U.S.C. § 362(b)(4) provides that this stay also does not apply to "* * * the commencement or continuation of an action or proceeding by a governmental unit * * * to enforce such governmental unit's * * * police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action * * * to enforce" such power. In the House Judiciary Report following11 U.S.C. § 362, it states,
"Paragraph [b](4) excepts commencement or continuation of actions andproceedings by governmental units to enforce police or regulatory powers.Thus, where a governmental unit is suing a debtor to prevent or stopviolation of fraud, environmental protection, consumer protection,safety, or similar police or regulatory laws, or attempting to fixdamages for violation of such a law, the action or proceeding is notstayed under the automatic stay."[14]
 {¶ 12} In order to determine whether an action in a non-bankruptcy court qualifies under 11 U.S.C. § 362(b)(4) as exempt from an automatic stay, courts balance the purpose of the governmental action at issue: if it relates to the enforcement of police or regulatory powers, the action will not be stayed; but, if it attempts to impart to the governmental unit a pecuniary advantage over other creditors with priority in a debtor's estate assets, it will be stayed.[15]
 {¶ 13} It is clear that housing noncompliance, punishable as a first degree misdemeanor, is a criminal offense. Additionally, the violations enumerated in reports detailing Green's noncompliance with the housing code included loose shingles, loose or missing exterior mortar, deteriorated exterior paint, a deteriorated asphalt driveway and shoddy landscaping, among others. It is obvious that the Code provisions under which Green was cited were passed to promote the common good of all Shaker Heights community residents, and to prevent the emergence of intermittent tenement or slum housing in otherwise respectably maintained neighborhoods. As such, Green's unsupported argument that the City's enforcement of the Code was in the furtherance of some pecuniary interest, rather than the legitimate exercise of its police powers, is unpersuasive.
 {¶ 14} Consequently, Judge Montgomery correctly ruled that Green's bankruptcy proceedings did not divest the court of jurisdiction to adjudicate the housing noncompliance claim against him.
 III. DISCHARGE AND IMPOSSIBILITY TO COMPLY. {¶ 15} Green maintains that, in his personal bankruptcy proceedings, he filed a notice of intent to disclaim all interest in the property, the bankruptcy estate trustee granted the Bank's motion for relief from the automatic stay of proceedings against him imposed by11 U.S.C. § 362(a) and abandoned the property as a potential asset of the estate under 11 U.S.C. § 554(b) because it held no value. He claims that his discharge on the underlying mortgage debt should erase his criminal or civil liability to correct violations on the property, at all relevant times titled in his name. In a connected argument, he asserts that his right to possession of the property was extinguished or hindered and his physical ability to remedy violations was impaired to the point that he should no longer be held responsible for them, even though he remained the record title holder of the property.
 {¶ 16} Green claims that, although the property is still titled in his name, the bankruptcy court's discharge of his mortgage debt to the Bank erased his liability for the code related violations on the property. He asserts that he may begin his financial life anew with a "fresh start," but we cannot agree. It has been held, "* * * bankruptcy does not provide a dumping ground for unwanted property."[16]
 {¶ 17} Even assuming this was a debt subject to the bankruptcy proceedings, 11 U.S.C. § 523(a)(7) provides that a discharge under Chapter 7 does not discharge an individual debtor from any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." While a discharge in bankruptcy voids any judgment to the extent that it is a determination of the personal liability of the debtor for pre-petition debt, a discharge does not release the debtor from continued liability for property retained thereafter or insulate him from the enforcement of local ordinances with respect thereto.[17]
Under these basic rules, Green would remain personally liable for the property until he divested himself of title.[18]
 {¶ 18} 11 U.S.C.A. 554 provides that bankruptcy estate property is abandoned from the estate under the following circumstances:
"(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. "(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. * * *"
 {¶ 19} "The effect of abandonment by a trustee, whether accomplished by affirmative act under 11 U.S.C. § 554(a) or (b) * * * is to divest the trustee of control over the property because once abandoned, property is no longer part of the bankruptcy estate. * * * When property is abandoned, it ceases to be property of the estate and reverts to the debtor."[19] Whether property be abandoned under11 U.S.C. § 554(a) [or (b)], it is removed from the estate, thereby divesting the trustee of control, and divesting the bankruptcy court of jurisdiction over matters concerning abandoned property."[20] Once a trustee abandons property of the estate, the property is treated as though no bankruptcy had been filed, and interest in the property reverts back to the party that held such interest pre-petition.[21] Normally this party is the debtor,[22] but a creditor may be entitled to possession instead if, under applicable law or by exercise of contractual or other rights, it held a superior possessory interest at the time the bankruptcy petition was filed.[23]
 "After a mortgagor defaults, legal title passes to the mortgagee onlyas between the mortgagor and the mortgagee. As to the rest of the world,title remains in the mortgagor until the mortgagee forecloses on themortgage and the sale is consummated, the mortgagee recovers possessionof the property by ejectment proceedings, or the mortgagee otherwiseextinguishes the right of the mortgagor to redeem."[24]
 {¶ 20} COCSH Sec. 1407.22 expressly bestows criminal responsibility for Code compliance onto the title holder of a property, and case law confirms that a bankruptcy trustee's abandonment restores to the title owners of a property the control over it that they enjoyed prior to a property's inclusion into a bankruptcy estate. We cannot agree that when Green's bankruptcy trustee abandoned the property, Green himself earned the right to ignore any upkeep obligations with respect to it upon the discharge of the Bank's debt, with foreclosure proceedings still pending.
 {¶ 21} At a hearing following sentencing, Green claimed without evidentiary support that, after the trustee abandoned the property, the Bank changed all of its locks. Although he claimed this prevented, and prevents, him from correcting the Code violations, he presented no evidence of this fact and no other evidence that he was unable to exercise any possessory right he had, or has, as the title owner of the property, pending foreclosure.[25] Hence, this argument is without merit.
 {¶ 22} Accordingly, we can find no merit to Green's contention that any abandonment of the property by the bankruptcy trustee or exercise of control the Bank may have undertaken extinguished his obligation to cause his property to comply with the Code.
Judgment affirmed.
APPENDIX A — GREEN'S STATEMENT OF ISSUES PRESENTED FOR REVIEW
 {¶ 23} "Issue One: Should a Municipal Court be allowed subject matter jurisdiction to determine if Defendant has a possessory interest where the alleged building code violations are associated with a property where (1) the Defendant has filed a petition in Chapter 7 bankruptcy, (2) fully disclosed his interest in the property and described the property with sufficient details so as to put one on notice that the property is the subject of a proceeding in bankruptcy, (3) the statement of intentions declares that the petitioner will surrender the property and vacate said premises, (4) that said property is in fact surrendered under the bankruptcy laws, (5) the bank is granted Relief from Stay and Abandonment, and (6) the bank subsequent to the entry of judgment acts to protect/secure the property by changing the locks and engaging a security company so that (7) the debtor-defendant is effectively absolute[ly] precluded from re-entering the premises?"
 {¶ 24} "Issue Two: Is the City of Shaker Heights pursuing a pecuniary interest and/or engaging in tactics of discrimination, harassment, and/or intimidation when it levies huge fines and sentences of imprisonment against a person whom they know to a substantial certainty has surrendered the property under the laws of Chapter 7 bankruptcy and that the Bank has secured the premises making it impossible for either the Debtor to re-enter the premises (as he is potentially subject to criminal or civil causes of action from the Bank) or the Bank to take action without the judgment of foreclosure, but does allow the City to continue fines on a daily basis for a continuing violation of the building code and to potentially lien the property?"
ANN DYKE, J., concurs.
MICHAEL J. CORRIGAN, P. J., concurs in judgment only.
[1] A violation of Codified Ordinance of the City of Shaker Heights ("COCSH") Section 1409.04.
[2] While Green asserts on appeal that Bank of New York has not notified him of its refusal to accept the deed in lieu of foreclosure, this argument was not made below and it was undisputed that foreclosure proceedings were pending at the entry of Green's guilty verdict.
[3] He was also ordered to provide a compliance plan by October 15, 2002.
[4] 4 COCSH Sec. 1407.22.
[5] COCSH Sec. 1409.03
[6] COCSH Sec. 1409.04.
[7] COCSH Sec. 1409.09.
[8] 8 COCSH Sec. 1409.99.
[9] 9 COCSH Sec. 101.99(b).
[10] COCSH Sec. 1403.08.
[11] 270 F.3d 374 (6th Cir., 2001).
[12] Id. at 383.
[13] See Schwartz v. United States, 954 F.2d 569, 570-71 (9th Cir. 1992), NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 940 (6th Cir. 1986).
[14] Id.
[15] Chao, supra, citing Word v. Commerce Oil Co., 847 F.2d 291, 297
(6th Cir. 1988) and United States v. Commonwealth Cos., 913 F.2d 518, 527
(8th Cir. 1990).
[16] State v. Nevers, Logan App. No. 8-02-07, 8-02-08, 2002-Ohio-5802.
[17] Id., citing In re Horton (Bankr.D.Colo. 1987), 87 B.R. 650,652; In re Lenz (Bankr.D.Colo. 1988), 90 B.R. 458, 460.
[18] Id.
[19] In re Sills (S.D.Ohio 1991), 126 B.R. 974, 976, citing Brown v.O'Keefe (1937), 300 U.S. 598, 602. See, also, In re Dewsnup (C.A. 10, 1990), 908 F.2d 588, 590, affirmed sub. nom Dewsnup v. Timm (1992),502 U.S. 410.
[20] In re Keller (Bankr.S.D.Ohio 1998), 229 B.R. 900, 902
[21] Brown v. O'Keefe, 300 U.S. at 602, Matter of Popp (Bankr.D.Neb. 1993), 166 B.R. 697, 700.
[22] Farm Credit Serv. of Mid-America, ACA v. Dues (1995),104 Ohio App.3d 760, 765,
[23] In re Bell, 700 F.2d at 1057-1058, In re A.J. Lane Co.,Inc, (Bankr.D.Mass. 1991), 133 B.R. 264, 268-269.
[24] Hausman v. Dayton (1995), 73 Ohio St.3d 671, 676.
[25] In its response to Green's motion for reconsideration, the City argued that the company responsible for changing the locks at the property offered to provide Green with a key upon request. It is well recognized, however, that a motion for reconsideration of a final order following the filing of a notice of appeal is of no effect, and no evidence presented in such a motion or its reply, or the judge's ruling on the motion, may be considered by this court in rendering an opinion. "A notice of appeal divests the trial [judge] of jurisdiction over that part of the final order, judgment or decree which is sought to be reviewed." State v. Wright, Cuyahoga App. No. 81644, 2003-Ohio-1958,Majnaric v. Majnaric (1975), 46 Ohio App.2d 157, 158.