**In re Jack BONA, a/k/a Jack Bonaccolta, Debtor.**

**Bankruptcy No. 89–B–12550.**

United States Bankruptcy Court, S.D. New York.

Feb. 16, 1990.

As Amended Feb. 23, 1990.

Marc Stuart Goldberg & Associates, P.C., New York City by Marc Stuart Goldberg, for debtor.

Greenberg Margolis by Clark E. Alpert and Steven Pasternak, Roseland, N.J., for GNAC and FDIC as Manager for FSLIC Resolution Fund as Receiver for San Marino Sav. and Loan Ass'n.

Isaac Nutovic, New York City, Chapter 7 Trustee for debtor.

MEMORANDUM DECISION DENYING DEBTOR'S MOTION FOR IMMEDIATE RELEASE FROM INCARCERATION AND GRANTING CREDITOR'S MOTION TO PARTICIPATE IN CAPIAS PROCEEDING

PRUDENCE B. ABRAM, Bankruptcy Judge.

The underlying legal issue in this case is one for which there was an express statutory answer in the former Bankruptcy Act of 1898 and in cases under the present

Bankruptcy Code until 1984. The issue is how and under what circumstances may a debtor imprisoned under a civil writ for the nonpayment of a debt secure his release after the filing of a Chapter 7 petition.

This court has determined that the debtor in this case is entitled to no relief as the debtor has already been denied the relief which he is now seeking in the bankruptcy court by the state and federal courts to which he has resorted since his Chapter 7 petition was filed.

### Statement of Facts

The Debtor, Jack Bona ("Bona" or "Debtor"), filed a voluntary Chapter 7 petition in this court late in the afternoon on Monday, October 2, 1989. The petition indicates that Bona had signed it on Wednesday, September 27. No schedule of assets and liabilities or statement of affairs was filed with the petition and only a single page list of creditors without any indication of the amounts due was attached to the petition. Concurrently with the filing of the Chapter 7 petition, Bona's counsel requested that the court sign an order to show cause fixing an immediate hearing on Bona's application for a writ of *habeas corpus* pursuant to 28 U.S.C. Sec. 2256 for production of the debtor and discharging him absolutely and unconditionally from the civil arrest and custody of the sheriff of Cape May County, State of New Jersey. The court signed the order to show cause and fixed a hearing for that Thursday afternoon, October 5. An interim Chapter 7 trustee, Isaac Nutovic, was promptly appointed.

Bona had been incarcerated the week prior to the filing of the Chapter 7 petition and on Monday, September 25, 1989 on a writ of *capias ad satisfaciendum* [1] by the Superior Court of New Jersey, Law Division, Atlantic County (the "Capias Court") at the request of a judgment creditor, GNAC, Corp. ("GNAC").[2] GNAC Appen-

---

1. A writ of *capias ad satisfaciendum* is an execution against the person and is commonly called a body execution. See generally, 30 *Am.Jur.2d* Executions at Secs. 865–880. It is available by statute in New Jersey. See generally, *Perlmutter v. DeRowe*, 58 N.J. 5, 274 A.2d 283 (Sup.Ct. 1971). Under N.J.S.A. 2A:17–78(b)(1), which incorporates N.J.S.A. 2A:15–42 by reference, the writ is available in an action founded upon an express or implied contract if the proof establishes that the defendant fraudulently incurred the debt. It is also available after judgment for damages to person or property when the court has found the damages were caused by the willful or malicious act of the defendant. See N.J.S.A. 2A:17–79. Discharge from imprisonment can be secured in accordance with the provisions of Chapter 20, Discharge of Insolvent Debtors from Arrest or Imprisonment of the Administration of Civil and Criminal Justice, N.J.S.A. 2A:20–1 thru 2A:20–11.

   Under N.J.S.A. 2A:20–1 if a debtor is willing to deliver up to his creditor or creditors all his estate, both real and personal, the debtor may make summary application for his release. Alternatively, the debtor may seek release under N.J.S.A. 2A:20–3 if he complies with N.J.S.A. 2A:20–2(a) which requires that the debtor make out and deliver "a true and perfect inventory under oath" of all of his personal property and real estate, or any interest therein and a bond with security for double the sum for which he was taken in execution. Post-arrest conveyances and sales are void against creditors and the assignee. N.J.S.A. 2A:20–7. The court is authorized to appoint an assignee in an action for release if the court is satisfied that "the conduct of the debtor has been upright". N.J.S.A. 2A:20–5. If an assignee is appointed the debtor is to forthwith execute to the assignee a general assignment of all his real and personal property, with an inventory of his estate and a list of creditors. N.J.S.A. 2A:20–6. Upon the making of the assignment, the court may direct the debtor's release. N.J.S.A. 2A:20–8. Any creditor is entitled in a summary action to compel the debtor's retention in prison if the creditor proves to the satisfaction of the court that the debtor has not fully delivered up to the use of his creditors all of his property, real or personal, or that he has concealed or kept back any part of his property or suffered a judgment to be entered against him or made any conveyance, deed, mortgage, sale, transfer, assignment or other disposition of his property, real or personal, with intent to defraud his creditors. N.J.S.A. 2A:20–9.

   Although use of body executions is apparently uncommon today, except for the collection of child support, federal law countenances the use of a body execution to collect a judgment issued by a federal court if it is permitted under the state law of the state in which the debtor is imprisoned. 28 U.S.C. Sec. 2007. Compare *Carter v. Lynch*, 429 F.2d 154 (4th Cir.1970) (Imprisonment for debt under South Carolina statute did not raise substantive or procedural due process issue).

2. To date in this case GNAC has submitted three volumes of documents in the form of appendixes (Case Documents 4, 15 and 29). Bona has

dix at 33–35. On March 18, 1988, GNAC had obtained a judgment against Bona in the amount of $29,264,168. GNAC Appendix at 373. Thereafter the judgment was amended on April 14, 1988 to provide for its deemed satisfaction by $18 million if the real property involved was returned free and clear of liens. GNAC Appendix at 503. Various appeals and hearings followed. GNAC Appendix at 7–9. On September 25, 1989, the Capias Court entered a further amended Final Money Judgment in favor of GNAC and against Bona which potentially reduced the amount of the judgment to $10,406,821. GNAC Appendix at 1–2. GNAC's judgment is based on a finding that Bona fraudulently caused a lis pendens to be filed and maintained on property owned by GNAC. GNAC Appendix at 4–15.

On October 5, 1989 this court held a hearing on Bona's application for release on a writ of *habeas corpus.* GNAC vigorously opposed Bona's request on both legal and factual grounds. GNAC provided extensive documentation of Bona's prior efforts to avoid court process and the circumstances under which GNAC had obtained its judgment and the *capias* writ. GNAC Appendix at 1–396. In particular, GNAC opposed Bona's release until he satisfied the requirements of disclosure about his financial affairs which he had agreed to in the Capias Court as a precondition of his release. In addition, GNAC argued that the statute under which Bona sought his release, 28 U.S.C. Sec. 2256, was no longer effective and therefore could not form the basis for Bona's release. Both the Chapter 7 Trustee and counsel for the FDIC as Manager for FSLIC Resolution Fund as Receiver for San Marino Savings and Loan Association ("FDIC") appeared at the hearing in opposition to Bona's motion.

The factual merits of Bona's position were significantly undermined by the fact that he had not as of the October 5 hearing filed the required bankruptcy schedules or statement of affairs. It was in that light

that this court considered whether the disclosure conditions which had been set in the Capias Court for Bona's release violated any fundamental precept of the Bankruptcy Code and found that they did not as adequate disclosure is fundamental to a bankruptcy case and to a debtor's entitlement to a bankruptcy discharge. This court declined to grant Bona the emergency relief he requested because it appeared that there was a significant possibility that 28 U.S.C. Sec. 2256 was not in effect. In addition, it appeared that there were possible grounds on which Bona's discharge might be denied and certain debts that might be found non-dischargeable, conditions that would preclude release under 28 U.S.C. Sec. 2256 even if it were in force.

The court also heard oral argument by Bona's counsel on two additional theories on which Bona's counsel claimed Bona would be entitled to release but which had not been urged in Bona's written motion. The first was whether the continuation of the Debtor's imprisonment violated the automatic stay provisions of Bankruptcy Code Sec. 362 and the second was whether the court could grant relief to Bona under Bankruptcy Code Sec. 105. The court found neither additional theory sufficient to warrant changing the *status quo* by directing Bona's release from incarceration because Bona had made neither a legal nor a factual case sufficient for preliminary or permanent relief. This court offered Bona's counsel the opportunity to further brief the legal issues and continue the matter to another date. It was agreed that the October 5 hearing would be adjourned *sine die* and that GNAC would receive not less than five days' notice of any renewed or amended motion.

Less than a week after the hearing in this court and on October 11, 1989, Bona through his New Jersey counsel moved in the Capias Court for an order discharging him from custody or in the alternative staying his arrest under the *capias* writ.

---

not challenged the authenticity of any of these documents. This court's factual recitations are based on the matters of record in this case or on the documents in the various appendixes. Ref-

erences to the appendixes will be in the form GNAC Appendix at [page number] as the pages in three volumes are consecutively numbered.

... 

GNAC Appendix at 465–467. In a letter memorandum in support of the motion, Bona's counsel argued that the automatic stay provided in Bankruptcy Code Sec. 362 required the extinguishment of the *capias* writ, that the *capias* statute violates the equal protection clause, that Bona's arrest on the *capias* writ was improper and defective and finally that the use of the *capias* writ on the facts before the court was totally inappropriate and that its continuance ran counter to the bankruptcy stay. GNAC Appendix at 468–476. As Bona's papers make no mention of N.J.S.A. 2A:20–1, see footnote 1, it does not appear that his motion was intended to be one for release under that provision as an insolvent debtor.[3] The Capias Court treated the motion as an emergency matter and held a hearing on October 13, 1989. GNAC Appendix at 638–670.

At the hearing in the Capias Court, Bona's counsel stated that it was their understanding of the law that the Capias Court had concurrent jurisdiction with the bankruptcy court over the issues surrounding Bona's custody. GNAC Appendix at 639–640. The Capias Court heard the matter on the merits and denied Bona's motion for immediate release. GNAC Appendix at 655–656. The Capias Court issued its order on October 18, 1989 (GNAC Appendix at 592–595) in which it found, inter alia, that the interests of the State of New Jersey as reflected in its *capias* statute and other laws are essentially parallel to the interests of the relevant provisions of the bankruptcy laws and both bodies of law

"require (a) full and truthful descriptions of assets and liabilities to the reasonable satisfaction of the Court and the parties involved, as per the Bankruptcy Court's ruling on October 5, 1989, and (b) consideration of potential fraudulent conveyances. Bona has without adequate explanation failed to file any list of assets and has not complied with the *capias* statute." GNAC Appendix at 593.

The Capias Court stated its intention to interpret Bona's application for release, including his right to a release under the automatic bankruptcy stay, in a manner consistent with this court's interpretation of the bankruptcy laws. GNAC Appendix at 593–594. The Capias Court found that Bona had utilized a variety of devices and forum-shopping prior to seeking relief on October 13, including the filing of the bankruptcy petition. GNAC Appendix at 593. Bona appealed from the Capias Court's order (GNAC Appendix at 630–635) and sought a stay of incarceration pending appeal (GNAC Appendix at 636–637). No stay was granted. That appeal is still pending.

Only after proceeding unsuccessfully in the Capias Court did Bona seek to bring on a hearing on a motion to transfer venue of this case although at the October 5 hearing which was almost three weeks earlier this court had expressed considerable doubt about the propriety of venue in this district in light of questions about Bona's residence, Bona's incarceration in New Jersey and the pendency of an at least once related bankruptcy case in New Jersey. On October 23, 1989, this court signed an order to show cause fixing a hearing for October 27, 1989, on Bona's motion to transfer the venue of his case from this district to the United States Bankruptcy Court for the District of New Jersey at Camden. In his Chapter 7 petition Bona had alleged that his address for the greater of the 180 day period preceding the filing of the petition was 445 Fifth Avenue, New York City.[4]

---

**3.** Bona's motion sought, in essence, to vacate the *capias* order or to limit its prospective effect. Under the federal procedural system, this would be done by motion under Federal Rule of Civil Procedure 60(b) seeking relief from a final order or judgement on the grounds specified in that order such as the judgment has been satisfied, released or discharged or that it is no longer equitable that the judgment should have prospective application (F.R.C.P. 60(b)(5)) or any other reason justifying relief from the operation of the judgment (F.R.C.P. 60(b)(6)). See also Bankruptcy Rule 9024. Relief under Rule 60 is not in lieu of appeal remedies and can be used with respect to an order or judgment that was correct when made.

**4.** At the hearing held on February 1, 1990, discussed below, Bona's present counsel stated in the presence of Joseph Bonaccolta ("Joseph") that it was his understanding that Joseph, who is the Debtor's brother, has commercial space at that address in which is located a residential

The application in support of the request for a change of venue stated that on October 17, 1989, the Debtor had filed his schedules and statement of affairs. The reasons offered for the request for the change of venue were (a) that Bona was imprisoned in New Jersey on the basis of a *capias* writ issued by a New Jersey court under a New Jersey statute and that the district and bankruptcy courts in New Jersey would have a greater familiarity and knowledge with the legislative history and application of the relevant New Jersey law and (b) that Bona had a total of nine creditors, six of whom are located in New Jersey, and that a venue change would not have any detrimental effect to creditors and would be convenient to all of declarant's creditors.

A dispute arose over the shortness of the return date and the hearing on the motion was adjourned to and held on October 31, 1989. While a substantial question of truthfulness was raised by Bona's allegation of a New York residence in his petition as at no time in the past had Bona given a New York address, Bona declined to impeach the allegation of address in his petition or admit that venue in this district was not proper. This court denied the motion because none of the conditions that Bona alleged supported the transfer of venue were unknown to him at the time that he chose to file his petition in this district; his history of disregard for the judicial process and the delay in filing the motion suggested that the motion might be but a litigation tactic prompted by this court's unwillingness to grant his immediate release; a motion to transfer venue by the person who selected the forum is highly unusual; no creditor supported the transfer; and the Chapter 7 Trustee, GNAC and the FDIC opposed it. No appeal has been taken from the denial of the venue motion.

On November 17, 1989, Bona, by yet other counsel, commenced an action in the United States District Court for the District of New Jersey (Case No. 89–4747) pursuant to which he sought to have the District Court issue a writ of *habeas corpus* under 28 U.S.C. Sec. 2254, the non-bankruptcy federal *habeas corpus* statute. On that date a conference was held at which it became evident to the District Court that Bona had not then exhausted his state remedies, although exhaustion of state remedies is normally considered to be an absolute prerequisite to entitlement to *habeas* relief. On December 12, 1989, the District Court signed an order authorizing the withdrawal of Bona's petition for a writ of *habeas corpus nunc pro tunc* to November 17, 1989. The order recites for the record that there was an appeal which then remained pending in the state court which could effect the release of Bona at some point in time and that upon that basis Bona's counsel had determined that the petition as then written failed to set forth a sufficient basis at that time for issuance of the writ. Attachment to GNAC 2/7/90 Letter Brief.

By notice of motion dated December 29, 1989, GNAC sought in this court (1) a modification of the automatic stay in order to be able to proceed against Bona in an action pending in the New Jersey Superior Court, Chancery Division,[5] (2) a declaration that GNAC may proceed in the Capias Court to enforce litigant's rights pursuant to New Jersey Court Rule 1:10–1 et seq. or, in the alternative, a modification of the automatic stay to proceed with such enforcement; and (3) to compel limited Rule 2004 discovery to help determine whether Bona filed his petition in bad faith by asserting a New York residence.[6] In its application GNAC stated that it sought to lift the automatic stay for the purpose of being able to proceed with the *capias* case with-

---

apartment occupied by the Debtor. GNAC has sought, but not yet obtained, discovery with respect to the 445 Fifth Avenue premises and address.

5. This is a different action than the one in the Capias Court. By agreement at the February 1 hearing consideration of this aspect of the

GNAC's motion has been deferred to a later date.

6. By agreement at the February 1 hearing, consideration of this aspect of the GNAC's motion has been deferred to a later date.

out threat of being held in contempt, a threat that had been made by Bona's then bankruptcy counsel. A hearing on GNAC's motion was scheduled for January 29, 1990.

On January 5, 1990, Bona's new bankruptcy attorney presented to this court for signature an order to show cause why a "further order should not be made, *inter alia*, authorizing, (if necessary or appropriate), debtor's retention of Marc Stuart Goldberg & Associates, P.C., as attorneys, in place and instead of Robert P. Herzog, Esq., and Eli Rosman, C.P.A., as accountant; directing GNCA [sic] Corp. to withdraw a writ of *capias ad satisfaciendum;* the issuance of a writ of *habeas corpus*, pursuant to prior application" and for other and further relief. Counsel sought to have the court fix a hearing within a week. Because of the lengthy delay in presenting any renewed request to this court,[7] this court declined to treat the matter as an emergency and instead held a scheduling conference with the debtor's new bankruptcy counsel, the Chapter 7 trustee and counsel for GNAC and for the FDIC on January 11, 1990.

At that time it was agreed that no hearing needed to be held on the application to substitute counsel for the debtor. The application on which a hearing was sought by the order to show cause proposed that an accountant would be retained by Bona and that Bona would cause the accountant to prepare a report on Bona's financial affairs which would then be given to the trustee and to creditors to substitute for other forms of disclosure. At the scheduling conference the court indicated that the proposal with respect to the accountant did not appear to satisfy the statutory requirements imposed on Bona as a debtor to deliver up his property and documents concerning it to the Chapter 7 Trustee.[8] It was agreed that Bona would withdraw the proffered order to show cause and submit a motion to be returnable on February 1 and the GNAC's motion would be heard on the same date.

Bona's new motion dated January 18, 1990 sought an order directing GNAC to withdraw the *capias* writ and granting the issuance of a writ of *habeas corpus* pursuant to 28 U.S.C. Sec. 157(a). In Paragraph 3 of his application in support of the motion, Bona through his counsel acknowledged this court's "just and compelling concern that there be full and complete disclosure of Bona's assets and liabilities." Counsel pointed to letters of instruction to various parties to release documents which had recently been sent by him. In the accompanying memorandum of law, Bona's counsel argued that (1) Bankruptcy Code Sec. 105 authorizes the court to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code; (2) continued enforcement of the *capias* writ violates the automatic stay provision, Bankruptcy Code Sec. 362; and (3) the bankruptcy court has jurisdiction to issue a writ of *habeas corpus* on the theory that matters

---

7. Bona's new bankruptcy counsel sought to explain his delay in presenting an application to this court on the grounds that, in addition to his recent retention, he had understood, albeit incorrectly, that the court was on vacation the last two weeks in December. This explanation failed to account for the fact that the order to show cause was not presented on the first day the court was expected to be available and Bona did not even sign the application until January 3, 1990. Nor did it account for the lack of any notice to GNAC or the Chapter 7 Trustee during those two weeks that the application would be forthcoming, a procedure which would have materially lessened their ability to argue about the granting of a short return date. This court concluded that it had no obligation to treat Bona's new application as an emergency matter even though he remained incarcerated because Bona had had adequate opportunity to renew his motion at an earlier time but had chosen not to do so. It appears from GNAC's motion that on December 28, 1989 GNAC's counsel spoke to Bona's initial bankruptcy attorney about this case and there is no indication that they were then advised that a substitution of counsel was imminent. Case Document 22 at Par. 12.

8. Bankruptcy Code Sec. 521 provides that among the debtor's duties is the obligation to surrender to any trustee serving in the case all property of the estate and any recorded information, including books, documents, records and papers, relating to property of the estate. In addition, the debtor is under a duty to cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under the Bankruptcy Code.

of *habeas corpus* should be considered to be among the matters referred under 28 U.S.C. Sec. 157(a).

Oral argument on the motion was heard on February 1, 1990. Both sides oppose the relief sought by the other. GNAC argues that Bona has frustrated his counsel's January 11 representation to the court that Bona would make immediate and complete disclosure of his documents pertaining to assets and produce necessary parties, including himself, for depositions out of an apparent fear that full disclosure would reveal his tens of millions of secreted dollars.[9] GNAC urges that this court not consider Bona's application for release because Bona, as an adjudicated contemnor who has failed to even attempt to purge himself of contempt, is disentitled to equitable relief; that Bona's application should not be considered until he has produced the discovery sought; that this court is without jurisdiction to issue a writ of *habeas corpus;* that no writ should be issued in any event because GNAC's judgment is non-dischargeable; that Bona should not be afforded a second bite of the apple by appealing to this court for relief he sought and was denied in the Capias Court; that the automatic stay does not require GNAC to take any affirmative action to secure Bona's release from incarceration under the *capias* writ; and finally that Bankruptcy Code Sec. 105 does not grant this court the power to grant the relief Bona requests.

Bona opposes GNAC's request to lift the stay because it would allow one creditor to proceed against property of the debtor and would intrude on the duties of the trustee.

In his post-argument brief, counsel for Bona argues that the Capias Court's decision of the applicability of Bankruptcy Code Sec. 362 is null and void and of no effect and that the Capias Court was without jurisdiction to rule on the matter. GNAC's post-argument letter brief urges that the state court had jurisdiction over the question and that Bona is judicially estopped from asserting that the state court did not have jurisdiction since he caused the state court to adjudicate the issue.

## DISCUSSION

### *The Availability of Habeas Corpus*

■ This court will first consider the availability of *habeas corpus* in the bankruptcy court. Under the former Bankruptcy Act, an incarcerated debtor was entitled to his release if the debt on which he was imprisoned was dischargeable. *See* former Bankruptcy Act Sec. 9 ("A bankrupt shall be exempt from arrest upon civil process except in the following cases: * * * when issued from a State court having jurisdiction, and when served within such State, upon a debt or claim from which his discharge in bankruptcy would not be a release * * * ") and 1A *Collier on Bankruptcy,* 14th Ed.1976, Paras. 9.01–9.04. The provisions of 28 U.S.C. Sec. 2256, which became applicable with the effective date of the Bankruptcy Code and remained in effect until 1984, were to the same effect:

"a bankruptcy court may issue a writ of habeas corpus * * * (2) ordering the release of a debtor in a case under title

---

**9.** It is worth noting that no one disputes that during the last decade Bona has been involved in substantial business transactions. He was heavily involved with a California saving and loan, San Marino Savings and Loan Association, which failed in 1984 from which he and an associate are alleged to have received excessive and improper loans in the amount of $194 million through various business ventures.

Bona's own schedules acknowledge a debt to another savings bank, San Antonio Savings & Loan Assoc. of $23 million plus interest, subject to reduction from the proceeds of sale of property, as the result of a personal guaranty reduced to judgment. Case Document 8.

GNAC has submitted a copy of a June 30, 1986 Statement of Financial Condition for Bona which shows a purported net worth of in excess of $26 million. GNAC Appendix at 759. GNAC avers that at his various depositions before the filing of the bankruptcy petition Bona has offered no explanation adequate to explain the disappearance of his assets. Bona's schedules do not reflect any assets except for stock in certain non-public corporations. The list of corporations in his schedules is significantly shorter than the list of entities as to which Bona authorized release of information in mid-January. Compare Case Document 8 with Case Document 24.

11 in custody under the judgment of a Federal or State court if—

(A) such debtor was arrested or imprisoned on process in any civil action;

(B) such process was issued for the collection of a debt—(i) dischargeable under title 11; or (ii) this is or will be provided for in a plan under chapter 11 or 13 of title 11; and (C) before the issuance of such writ, notice and a hearing have been afforded the adverse party of such debtor in custody to contest the issuance of such writ."

The circumstances under which 28 U.S.C. Sec. 2256 were deleted do not indicate that Congress had determined that a change of policy relative to the release of an incarcerated debtor was warranted. Rather the deletion occurred as part of the package of jurisdictional amendments made in 1984 in response to the massive turmoil over the appropriate scope of the jurisdiction which could be exercised by the Article I bankruptcy court which was created by the decision of the United States Supreme Court in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). There is no suggestion that Congress failed to reenact a specific bankruptcy *habeas corpus* provision because of a view that the automatic stay provisions of Bankruptcy Code Sec. 362 would mandate the debtor's release in any event. The very enactment of the *habeas corpus* provision at the time the Bankruptcy Code was first adopted is evidence that it was viewed as a necessity for obtaining the debtor's release and that the automatic stay by itself would not secure release for the debtor.

This court must presume that in 1984 Congress only intended to effect a change in the procedural method by which the right of *habeas corpus* could be obtained. This court finds that either the bankruptcy court or the district court acting *qua* bankruptcy court has sufficient power to cause the release of a debtor imprisoned on a civil collection writ through some means and that in appropriate circumstances that power should be exercised.

Apparently there are no reported post–1984 cases bearing on the *habeas corpus* issue as the parties have not cited the court to any nor has the court's own research uncovered any. The leading treatise, *Collier on Bankruptcy*, 15th Ed., contains only the cryptic sentence that "Matters of *habeas corpus* should be considered to be among the matters referred under 28 U.S.C. Sec. 157(a)." 1 *Collier on Bankruptcy*, 15th Ed. (1989), Par. 3.01[9] at 3–119.

The district court has original and exclusive jurisdiction of all bankruptcy cases. 28 U.S.C. Sec. 1334(a). The district court has original but not exclusive jurisdiction of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. Sec. 1334(b). Sec. 157(a) provides for the reference from the district court to the bankruptcy judges of any or all bankruptcy cases, as well as proceedings arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code. These matters are referred to the bankruptcy judges in this district by virtue of a standing order of the district court.

The referred matters under Sec. 157(a) include both so-called core and non-core matters. See 28 U.S.C. Sec. 157(b). The core-non-core dichotomy does not necessarily correlate with the concept of exclusive or concurrent jurisdiction. Thus a matter could be a core matter and not be within the exclusive jurisdiction of the district court *qua* bankruptcy court.

In considering the *habeas corpus* issue, a number of possibilities are present. For example, the matter would be a core matter if it were determined to be part of a determination as to the dischargeability of particular debts. Compare Sec. 157(b)(2)(I) and *In re Torgovnick*, 49 F.2d 211 (2d Cir.1931) (Order seeking stay of arrest regarded as ancillary to the discharge). It would likewise be a core matter if it were to be considered a matter concerning the administration of the estate under Sec. 157(b)(2)(A). See, e.g., *McDonald v. Burrows*, 731 F.2d 294, 298 (5th Cir.1984) (Decided under former 28 U.S.C. Sec. 2256) (A

bankruptcy court is authorized to prevent interference with the administration of the bankruptcy estate by issuance of the writ). Motions to terminate, annul or modify the automatic stay are core proceedings under Sec. 157(b)(2)(G).

If, on the other hand, it were decided that the proper basis of relief required resort to the general federal *habeas corpus* statute, 28 U.S.C. Sec. 2254, then the matter would have to be treated as a non-core matter as it appears that only the district court would have the authority under 28 U.S.C. Sec. 2241 to grant the writ.[10] Non-core matters are handled by the bankruptcy court hearing the matter and submitting proposed findings of fact and conclusions of law to the district court.

Yet another method for the bankruptcy court to be able to act relative to a *capias* writ would be through the removal to the bankruptcy court of the action in which the *capias* writ had issued. Any party to a civil action may remove any claim or cause of action in the action to the district court for the district where the action is pending. See 28 U.S.C. Sec. 1452 and Bankruptcy Rule 9027. After removal, which occurs automatically upon the filing of the appropriate papers, the action is an adversary proceeding. Bankruptcy Rule 7001(10). Once a civil action is removed the bankruptcy court acts in the place and stead of the prior court and could act directly to alter or amend any order, including a *capias* writ, that had been previously granted, providing it was appropriate to do so under the applicable procedural and substantive law. See, e.g., footnote 3. Venue of the adversary proceeding could be transferred to the district in which the bankruptcy case was pending if it were in the interest of justice or for the convenience of the parties. 28 U.S.C. Sec. 1412.

■ No assertion has been made that the present motions are not core proceedings and this court is satisfied that the motions are core proceedings in light of the relief, or lack thereof, that this court has determined to grant. Compare *Woods v. Dahlberg*, 894 F.2d 187 (6th Cir.1990) (Denial of a motion to proceed in *forma pauperis* outside scope of Article I magistrate's authority because it is a functional equivalent of an involuntary dismissal although grant of motion would not be beyond magistrate's authority.) It is unnecessary for this court to reach the question of whether the actual issuance of a *habeas corpus* writ is a core or non-core matter.

■ If the bankruptcy court were to be guided by the prior law, then it would not direct the release of a debtor if it found the debt on which the imprisonment had been obtained would not be dischargeable. This court is satisfied that it should be so guided as it accords with the policies of the Bankruptcy Code to provide the honest debtor with a fresh start. *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). See also *In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y.1985). The nature of the remedy being sought also dictates this result. In *In re Torgovnick, supra*, a case under Sec. 9 of the former Bankruptcy Act, the Second Circuit in discussing the nature of an application for a stay against arrest stated that it is

> *"somewhat like a provisional or temporary discharge, until the final question can be determined. Indeed, a stay against arrest * * * is not alone for the bankrupt's benefit*, but is necessary to the discharge of his duties in the bankruptcy court, and is granted in some measure, even when the claim is not dischargeable."* 49 F.2d at 212. (Emphasis added.)

---

**10.** A district court may issue a writ under 28 U.S.C. Sec. 2254 only when it has jurisdiction over the custodian. It is not clear what the scope of jurisdiction over the custodian in the bankruptcy context would be considered to be. Under former General Order 30 and former Bankruptcy Rule 913(b) which were operative under the former Bankruptcy Act no district

limitation on the *habeas* power was stated, perhaps on the assumption that the debtor was unlikely to be incarcerated elsewhere than the district in which he filed the petition or because of other inherent limits on the power of referees in bankruptcy. Cf. Bankruptcy Rule 2005(b). Bona is incarcerated in another federal district.

See also *U.S. v. Meyering,* 66 F.2d 347 (7th Cir.1933) (Debtor not released); *U.S. v. Sheriff of Kings County,* 4 F.Supp. 103 (D.C.E.D.N.Y.1933) (Debtor not released); and *U.S. v. Sheriff of Nassau County,* 52 F.2d 903 (D.C.E.D.N.Y.1931) (Debtor released).

Bona's debt to GNAC has been stated to be based on a finding of fraud and thus it must be assumed in considering the issues that the debt on which Bona is now incarcerated could well prove not to be dischargeable.[11] On February 9, 1990, GNAC and the FDIC filed a complaint objecting to the dischargeability of their debts. On that date, the Chapter 7 trustee also filed a complaint objecting to the Debtor's discharge.

The concept of incarceration of the debtor is not alien to the bankruptcy process. The Bankruptcy Rules specifically provide for the arrest and incarceration of the debtor for the purpose of obtaining information about the case. See Bankruptcy Rule 2005(a) and (b). Bankruptcy Rule 2005(c) states that in determining what conditions will reasonably assure attendance or obedience under Rule 2005(a) or appearance under Rule 2005(b) the court is to be governed by the standards, procedures and factors to be considered in determining conditions of release of accused persons in noncapital cases prior to trial. These conditions could include disclosure preconditions.

*The Automatic Stay*

■ Bona's attorney argues that the state court had no jurisdiction to determine whether the automatic stay provided by Bankruptcy Code Sec. 362 applied to the *capias* proceeding and that this court should therefore ignore the results of Bona's litigation in the non-bankruptcy forums after this court's hearing on October 5, 1989. This argument is without merit. The Second Circuit squarely held in *In re Baldwin–United Corporation Litigation (Erti v. Paine Webber Jackson & Curtis),*

765 F.2d 343, 347 (1985), that the court in which litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay. *Accord, NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934 (6th Cir.1986). Although the Second Circuit's decision involved a suit in the federal district court, there is nothing in the decision to suggest any relevant distinction between an action in the federal court and one in the state court.

Although the Second Circuit in *Baldwin–United* reversed the district court, it did so because it found the district court had abused its discretion on the facts of the case. The Second Circuit held that whether the non-bankruptcy forum should exercise its authority to determine the scope of the automatic stay is a separate question from its jurisdiction on the issue. In the event of a conflict between the authority of the bankruptcy court to administer its case and that of the authority of the non-bankruptcy forum to administer its case, the equities favor maintenance of the unfettered authority of the Bankruptcy Court. 765 F.2d at 348.

■ The question of whether the automatic stay applies to an action is one over which the bankruptcy court has only concurrent jurisdiction. That question is different than the question of whether the automatic stay, if found to be in existence, should be vacated. As to this later question, the bankruptcy court has exclusive jurisdiction. See *Cathey v. Johns–Manville Sales Corporation,* 711 F.2d 60, 62–63 (6th Cir.1983).

In light of the concerns that this court had expressed at the October 5 hearing about the availability of any relief in this forum, the Capias Court cannot be said to have abused its discretion in entertaining Bona's application since there was no question about the Capias Court's power to effect Bona's release if it chose to do so.

---

**11.** If Bona is released now, a question would arise whether he was subject to being reincarcerated if and when the debt to GNAC is determined to be non-dischargeable. *See* N.J.S.A. 2A:20–10.

A number of procedural and technical problems relative to the availability of *habeas corpus* had surfaced at the October 5 hearing before this court. It appeared then to be a novel issue, and, even with the benefit of additional research and time for consideration, it has remained one. Bona's choice to pursue relief in the Capias Court appears to have been a sound litigation strategy, even though the outcome was not to his liking, particularly since Bona's primary objective for his bankruptcy petition had been to secure his release from incarceration.

It seems self-evident that since the Capias Court did have jurisdiction over the issue of the applicability of Sec. 362 that its rulings and orders are valid and binding on Bona. The Second Circuit has recently admonished the bankruptcy court not to sit in judgment of the rulings of non-bankruptcy forums, even those with which it disagrees.[12] See *Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir.1987) and *In re Berry Estates, Inc.,* 812 F.2d 67, 71 (2d Cir.1987). See also *In re Mastercraft Record Plating, Inc.,* 39 B.R. 654, 657–58 (D.C.S.D.N.Y. 1984), reversing 32 B.R. 106 (Bankr.S.D.N.Y.1983).

Whether the Capias Court properly exercised its authority is a matter to be determined by direct appeal from its order. It is not for this court to review that exercise of discretion, even if it were of the view that it had been wrongly exercised, which it is not. Having elected to pursue the matter in the state courts after commencing the bankruptcy case, Bona is not free to seek relief from this court merely because he is not satisfied with the outcome of his litigation efforts.

Bona holds the keys to the prison door and has since the day he was incarcerated. He remains free to seek his release by bringing a summary action under N.J.S.A. 2A:20–1, see footnote 1. He would be required to provide an inventory of his estate and a list of his creditors and assign all his real and personal property. The court could then direct his release if satisfied his conduct had been upright. Should the court not be satisfied with his inventory and lists on his first application and therefore deny his release, he would be free to apply again. See, e.g., *Cofer v. Corio,* 113 N.J.L. 498, 174 A. 758 (1934) (Court required to consider debtor's third application for release); and *Koch v. Costello and Botti,* 93 N.J.L. 367, 108 A. 225 (1919) (Third application) (At hearing at which debtor presents inventory of his estate, the court shall proceed to examine into the truth and justice of the application for release and consider and examine the truth and fairness of the account and inventory). It is evident that the mere showing by Bona that he has filed a bankruptcy petition will not suffice. The level of disclosure must be suitable to the nature of a particular debtor's financial affairs. The court is entitled to demand assurance of truthfulness and completeness.

Bona's present bankruptcy counsel asserts that as the *capias* proceeding is for the benefit of a single judgment creditor that its continuation fundamentally violates the equality of treatment provisions of the Bankruptcy Code. Plainly the *capias* issued at the instance of a single creditor. However, counsel's argument ignores the actual provisions of N.J.S.A. 2A:20–1 et seq. under which Bona can seek his release which plainly contemplate equality of treatment for an insolvent debtor's creditors. See footnote 1. Thus, there is no danger that property of this estate will be improperly diverted to a single creditor in the *capias* proceeding.

**12.** While this court's decision focuses on the actions of the Capias Court, it is well to remember that Bona is also precluded from the relief he seeks by his voluntary dismissal of his *federal habeas corpus* action. See Statement of Facts, *supra.* In essence, he conceded by withdrawing the action that no statute of the United States, which would necessarily include the Bankruptcy Code, then mandated his release from incarceration. Put differently, Bona was then afforded the opportunity to litigate over the issue of what exhaustion of remedies was required in the bankruptcy context. Even if he had explicitly sought a determination on the point it seems unlikely that any federal relief would have been afforded to him then since in his case the state court had plainly taken due account of the superiority of the Bankruptcy Code.

■ Precisely because this court finds that the *capias* proceeding can accommodate to dovetail with this bankruptcy case and the provisions of the Bankruptcy Code, this court lifts the automatic stay to the extent that it exists so that GNAC may participate in any and all proceedings or actions involving the *capias* writ, whether they are directed at the writ itself or at Bona's release. Unless this court authorizes GNAC to continue its efforts to uncover the truth about Bona's financial affairs, Bona may well defeat the Chapter 7 Trustee's efforts to administer this currently asset-less estate. Furthermore, the Capias Court is already familiar with the prior litigation between Bona and GNAC and is therefore in an excellent position to deal with disclosure issues. Bona has shown himself to be a tenacious litigant. Even since his incarceration on the *capias* writ he has been involved in numerous litigations. The Chapter 7 Trustee finds GNAC's participation beneficial to the estate and has no objection to GNAC carrying the laboring oar with respect to litigating over the adequacy of Bona's disclosure.

■ If the debtor chooses to litigate post-filing in a non-bankruptcy forum, as Bona has done, then the opposing party is free to participate in the litigation to the full extent necessary to protect its rights. See *In re Cobb*, 88 B.R. 119, 121 (Bankr.W. D.Tex.1988) (When debtor-in-possession appears and defends a suit on any basis other than application of the automatic stay, the debtor-in-possession waives the automatic stay. "To hold otherwise would allow a debtor-in-possession to have [a] trump card that he could play if he did not like the outcome of the action, but allowing him [to] take a favorable judgment. Such a one-sided result could hardly have been intended by Congress * * * ".) See also *In re Ideal Roofing & Sheet Metal Works, Inc.*, 9 B.R. 2 (B.C.S.D.Fla.1980). Indeed, the automatic stay would not even apply were Bona to initiate a release proceeding because the release proceeding is a separate action which can be initiated only by the incarcerated debtor. Compare *Jefferson Ward Stores, Inc. v. Doody Company*, 48 B.R. 276 (D.C.E.D.Pa.1985) (Court refused to stay motion in third party action since automatic stay did not apply as the debtor was plaintiff in that action, even though defendant in main action.) The creditor is allowed to appear and be heard with respect to the merits of the debtor's release application. Under the provisions of the former bankruptcy *habeas corpus* statute, notice and a hearing had to be afforded to the adverse party of the debtor in custody to contest the issuance of the writ. This court is also lifting the automatic stay so that GNAC might bring action under N.J. S.A. 2A:20–9 should it choose to do so. See footnote 1, *supra*.

At the present time, Bona's incarceration is not incompatible with the proper administration of this bankruptcy case. Even under the coercion of actual imprisonment Bona made no disclosure for the first three months he was incarcerated beyond the filing of his sparse schedules and statement of affairs. In the fourth month of incarceration, Bona purported through his attorney to direct immediate disclosure by various persons. Questions respecting the attorney's authority to direct disclosure were raised which have not yet been clearly resolved. To date no meaningful disclosure has been forthcoming because Bona has now asserted claims of attorney-client privilege with respect to some or all of the significant documents.

This court has considered all of the arguments that have been put forth. The court denies Bona's motion for the reasons which have been set forth above. The denial of Bona's motion renders it unnecessary for the court to consider GNAC's motion to adjourn the matter pending disclosure. The court grants GNAC's motion to participate in any proceedings relative to the *capias* writ for the reasons set forth above.

It is so ordered.